Mary Bullard ROUSSEAU et al., Plaintiffs,

v.

**UNITED STATES TRUST COMPANY OF NEW YORK, Defendant.**

**No. 76 Civ. 1694.**

United States District Court, S. D. New York.

Nov. 4, 1976.

Pollack & Kaminsky, New York City, for Rousseau Family; Daniel A. Pollack, New York City, of counsel.

**450**

Carter, Ledyard & Milburn, New York City, for defendant; John M. Walker, Jr., Richard B. Covey, Dan T. Hastings, New York City, of counsel.

WYATT, District Judge.

This is a motion by defendant for a wide variety of relief:

(1) to dismiss the complaint "or a portion thereof" for lack of jurisdiction over the subject matter (Fed.R.Civ.P. 12(b)(1))

(a) because Cornell University is an indispensable party plaintiff and if joined as a party there will be no complete diversity of citizenship; and

(b) because plaintiff Mary F. Rousseau is a citizen of New York and there is no complete diversity of citizenship;

(2) to dismiss the complaint or parts of it for lack of jurisdiction over the subject matter (Fed.R.Civ.P. 12(b)(1)) because the claims relate to estate administration which is outside the jurisdiction of federal courts;

(3) to stay counts I and III pending the outcome of a proceeding in a Connecticut probate court;

(4) to dismiss the complaint for failure to join indispensable parties (Fed.R.Civ.P. 19);

(5) to dismiss the complaint for failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)); and

(6) to postpone discovery.

At the oral argument, the motion as respects postponement of discovery was withdrawn.

## 1.

H. H. Rousseau was a citizen and a resident of Connecticut. He died on February 22, 1972, leaving a will (which had been executed in New York).

H. H. Rousseau had two brothers. John died in August 1971 and William died in May 1972.

The will of H. H. Rousseau was admitted to probate on April 4, 1972, by the Probate Court for Fairfield County, Connecticut. The will named as Executors of and Trustees under the will Mary Bullard Rousseau (wife of H. H.), John (his brother), and defendant Trust Company. Since John had died before H. H., the Connecticut Probate Court approved as co-executors Mary Bullard Rousseau and defendant Trust Company.

On April 12, 1976, the defendant Trust Company filed with the Connecticut Probate Court an account covering the administration of the estate through April 22, 1975. Mary B. Rousseau was asked to join in filing the account but declined to do so.

It appears that dates for a hearing on the account as filed in the Connecticut Probate Court have been set and adjourned, the hearing being now set for November 4.

## 2.

H. H. Rousseau had four daughters: Alexandra R. Stark, Wendy R. Powell, Mary R. Roessler, and Helene B. Rousseau. The three first named daughters are now married; the last named is unmarried.

Under date of April 29, 1965, H. H. Rousseau established four separate trusts, one for each of his daughters. He executed in New York four trust instruments with defendant Trust Company as Trustee and transferred to the Trustee property to be held in trust.

## 3.

Under the will of H. H. Rousseau, seven testamentary trusts were to be established: a trust for his wife (Mary Bullard Rousseau), a trust for each of the four daughters (Alexandra, Wendy, Mary ("Polly"), and Helene ("Lanie")), a trust for brother John, and a trust for brother William. It will appear uncertain whether the trusts for the wife and four daughters have ever commenced their existence and even more uncertain whether the trusts for the two brothers could have, or did, come into existence.

## 4.

This action was commenced on April 12, 1976.

Plaintiffs are the widow, the four daughters, and nine nephews and nieces of H. H. Rousseau (these being the remaindermen of the trusts for the two brothers).

There are three separate claims, but all three claims are based on the same alleged conduct of the defendant Trust Company. This was the retention as assets of the estate and of the trusts of common stock of Coleco Industries, Clorox, and Evans Products. This is charged as having been improper, imprudent, negligent and a breach of fiduciary obligations.

The claim in the first count is by all plaintiffs as legatees, trust beneficiaries, or remaindermen under the will of H. H. Rousseau.

The claim in the second count is by the four daughters as beneficiaries of the April 29, 1965 inter vivos trusts.

The claim in the third count is by the nine nephews and nieces as remaindermen of the two testamentary trusts for brother John and brother William in the will. There is a claim that defendant improperly delayed distribution to the children of brother William and has never made any distribution to the children of brother John.

Jurisdiction is asserted to exist by reason of diversity of citizenship. 28 U.S.C. § 1332

It should be noted that a judgment for money damages to each plaintiff is asked. Trial by jury is demanded.

### 5.

■ Movant contends that Cornell University is an indispensable party plaintiff.

The interest of Cornell is remote in the extreme. In respect of the testamentary trusts, at the end of the trust term the trustee is directed to pay over the principal to the then living beneficiaries or if none be then living to those persons who would then take if the testator had died intestate and if there be no persons of this description, then to Cornell. A similar provision is in the inter vivos trusts.

Movant would have Cornell an indispensable party because joining Cornell would destroy diversity as a basis of jurisdiction.

Fed.R.Civ.P. 19 was amended in 1966 to its present form. A chief change was to leave it to the Court's discretion whether "in equity and good conscience" the action should proceed with its parties or should be dismissed for want of a party.

Considering the remoteness of Cornell's interest and the presence of all the real parties in interest, along with the other factors specified in Fed.R.Civ.P. 19(b), the conclusion is compelled that Cornell should not be regarded as "indispensable".

There is a good opinion in this area by Judge Doyle, now a Circuit Judge, then a District Judge. *Rippey v. Denver United States Nat. Bank*, 260 F.Supp. 704, 707–712 (D.Col.1966)

This part of the motion is denied.

### 6.

■ Movant contends that plaintiff Mary R. (Polly) Roessler was a citizen of New York when the action was commenced and thus that there is no diversity.

It is conceded by movant that all plaintiffs except Polly are citizens of states other than New York. The sole question is: was Polly domiciled in New York on April 12, 1976? Evidence was taken at a hearing on September 24, 1976.

Polly was born in Danbury, Connecticut on February 3, 1947. She grew up in family homes in Redding and Fairfield, Connecticut. As already seen, her father and mother were domiciled in Connecticut where her mother and grandmother continue to be domiciled. She has been a member of an Episcopal church in Connecticut since she was fifteen and has never been a member of a church elsewhere. She has a driver's license for automobiles issued by Connecticut; she has never had such a license from any other state.

Two homes in Fairfield, Connecticut have figured in Polly's life to date. One is the home of her father and mother at 1009 Redding Road; this home is now owned by her mother. The other home is at 449 Mill Plain Road and is owned by her grandmother, the mother of her mother.

Polly appears to have gone to school in Massachusetts, Switzerland, and Italy.

She voted in Connecticut in 1968 and 1969 (SM 33).

In 1970, being then 23 years old, Polly got a job in New York City as assistant to the manager of a restaurant. After about three years in this job, she went to work for an investment banking firm in Wall Street; she was administrative assistant to an institutional salesman. She and the salesman later moved to another banking firm where Polly has been employed since.

When she began working in New York City, Polly took an apartment here at 300 East 74th Street. She lived there with three other girls. In the following year she took an apartment of her own at 128 East 83rd Street. Beginning March 1, 1974, she moved to an apartment at 351 East 84th Street.

The evidence indicates to me that the New York apartments were mere residences in the technical sense of that term—conveniences for the jobs in New York—and that her domicile of origin, Connecticut, persisted. She testified that up to August 1975 she stayed as a general rule four nights a week in her apartment and three nights a week—Friday, Saturday, and Sunday—in Fairfield (SM 72, 73). This seems a fairly typical pattern for a person who has a home and a "home feeling" in the country but who keeps an apartment in town as a convenience and to avoid every day commuting.

Until August or September 1975, Polly lived in Fairfield at the Redding Road home of her parents; since then she has lived at the Mill Plain Road home of her grandmother. It appears that the grandmother is about ninety years old, that Polly's mother moved in to be able to take care of the grandmother, and that Polly, her sister Lanie, and her uncle Henry (brother of her mother) live together in the grandmother's house (SM 20, 21, 55, 56, 72, 73).

In 1970 Polly became a member of the Junior League in New York and since 1973 has been a member of the Colony Club, also in New York.

After she began working in New York, Polly registered as a voter in New York and voted once in New York because one of her friends was campaigning for a candidate for mayor (SM 44).

For the years 1972, 1973, and 1974, Polly filed federal income tax returns in New York showing her address as her New York apartment. For the same years she paid New York State and city income taxes as a resident of New York (SM 80–82).

Since at least 1970, she has had a checking account at defendant Trust Company and more recently has had two savings accounts at New York banks.

In March 1975, the young man to whom Polly was engaged moved into her apartment in New York (SM 50, 51). His apartment lease had expired and he was considering a stay in London for an indefinite time. He moved his furniture into Polly's New York apartment and she moved most of her furniture to her grandmother's garage in Fairfield (SM 21, 65).

Beginning in August 1975 and doubtless as a result of discussions with counsel, Polly began consciously to evidence Connecticut as her domicile. She described herself in this period as "commuting to Connecticut" (SM 52). She notified the defendant Trust Company to change her address to Fairfield, Connecticut from the New York apartment. She seems to have notified many others with whom she dealt that her mailing address was Fairfield.

In August 1975, she registered as a voter in Connecticut but has not actually voted there yet.

She testified that after August 1975 she "commuted most of the time" from Connecticut and stayed in New York "one or two at the most, nights in the week" (SM 73).

The lease of the New York apartment was transferred to her fiance, effective October 1, 1975.

Polly moved the bulk of her clothes to Fairfield in August 1975 (SM 25).

For the year 1975, she filed a New York Nonresident Earnings Tax Return on April 1, 1976. This shows her "home address" as Fairfield, Connecticut. At the same time she filed a N.Y. State Income Tax Nonresident return showing her home address as Connecticut, and a Connecticut capital gains and dividends tax return.

For the year 1975, her federal income tax return was signed in and sent from Connecticut and showed a Connecticut address.

On June 19, 1976 Polly and her fiance were married at the Episcopal Church in Connecticut of which she has been a member.

On the foregoing state of facts, the conclusion is that on April 12, 1976, Polly was a citizen of Connecticut; that her domicile of origin was never changed from Connecticut; that if it were changed to a domicile of choice in New York, this change was reversed in and after August 1975 when Connecticut at that time became the domicile of choice; and that the conclusion is reached whether or not the burden of proof be upon the plaintiffs.

The law of domicile is familiar and need not be repeated. There is a good discussion in *Texas v. Florida*, 306 U.S. 398, 413–428, 59 S.Ct. 830, 83 L.Ed. 817 (1939), involving the considerable estate of Colonel Green. The Restatement (Second) of Conflict of Laws has a chapter.

There are here, as often, conflicting indications. The strong family ties and homes, the natural feelings, the pattern of country-city living, the convenience of a workaday residence as contrasted with the more expansive pleasures of a country home, and the still unknown business future of Polly's intended (and now) husband, seem persuasive to show Connecticut as her domicile on April 12, 1976.

### 7.

Movant contends that, even if there be diversity of citizenship and the required amount in controversy, this Court is without subject matter jurisdiction of the claims in the first and third counts because the estate of H. H. Rousseau is being administered under the control and supervision of the Connecticut Probate Court and this Court is without jurisdiction of such probate matters. Movant relies on decisions such as *Princess Lida v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939) and *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946).

Reference should be made to the situation to date in the Probate Court.

When H. H. Rousseau died on February 22, 1972, he was domiciled in the Probate District of Fairfield consisting of the town of Fairfield in Fairfield County. 21 CGSA § 45–1

On March 14, 1972, Mrs. Rousseau and defendant presented the will for probate to the Fairfield District Probate Court and stated in writing that if appointed they would accept the "position of trust" as "co-executors and co-trustees".

On April 4, 1972, the Probate Court made a decree admitting the will to probate and approving Mrs. Rousseau and defendant Trust Company as co-executors.

On August 31, 1972, an inventory of all the property of H. H. Rousseau was filed in the Probate Court. 21 CGSA § 45–202 The inventory was signed and sworn to by Mrs. Rousseau and by the Trust Company.

The will excuses the executors and the trustees from filing bonds. It appears that Mrs. Rousseau, being a resident of Connecticut, was probably qualified at all times as executor and trustee. The Trust Company, however, being a non-resident was required in order to qualify to designate the Secretary of State as agent for the service of process. This was done in 1972 early in the administration by the Trust Company as executor. As trustee, it seems not to have been done until January 1976 so that before that time technically the Trust Company was not qualified to act as trustee. Evidence was filed in the Probate Court on February 5, 1976, showing that the Trust Company was qualified to act as trustee.

It appears that trustees of testamentary trusts derive their appointment from the

will and no order of appointment as trustees is made by the Probate Court. As a means of facilitating administration the Probate Court does issue a "fiduciary's probate certificate" which *evidences* the authority of the fiduciary to act. Before issuing such a certificate, the Probate Court must be satisfied that the fiduciary has not only been appointed by the will but is qualified to act, that is, has accepted appointment, has (where necessary) executed a bond, has (in the case of a foreign corporation) designated the Secretary of State as agent for service of process, etc. Any number of fiduciary's probate certificates can be issued from time to time so that the fiduciary may give them to persons with whom he deals to evidence his authority. In the case at bar, because of the delay in designation of the Secretary of State as agent, no fiduciary's probate certificate evidencing the authority of Mrs. Rousseau and the Trust Company as *testamentary trustees* was obtained until February 10, 1976.

The fiduciary's probate certificate in Connecticut is issued on a printed form, which must be either an official or semi-official form. Two such certificates were issued under date of February 10, 1976. One showed the "position of trust" to be "co-trustees under Article Eighth, Fund A". The other showed the "position of trust" to be "Co-trustees under Article Eighth, Fund B". The printed form also has a space to show "date of appointment". In each case, this is given as "February 6, 1976", presumably the date on which the Probate Court was satisfied that the Trust Company had designated the Secretary of State as agent for service of process. The form of the certificate would indicate that prior to February 6, 1976, the Trust Company could only have acted as executor because until then it was not authorized to act as trustee.

There has been no order of the Probate Court in respect of the testamentary trusts or the trustees.

It is uncertain whether under Connecticut law a testamentary trust can come into existence without an order of the Probate Court directing or approving transfer of title to the trust res from the executor to the trustee.

In any event, the Trust Company did in fact transfer some property from the executors to five of the testamentary trusts, namely, those for Mrs. Rousseau and the four daughters. It did this by establishing on its books accounts in the name of the trustees for the five testamentary trusts and by entries on its books, including those accounts, showing the transfers and that the trustees were holding the property (shares of stock) transferred. It appears also that as to the stock so transferred, the stock certificates were segregated to show they were in the possession of the trustees.

Shares of Clorox were so transferred on October 17, 1972, January 31, 1973, and February 23, 1973, to the five testamentary trusts. Shares of Dr. Pepper and Pepsico were so transferred on February 23, 1973 to the five testamentary trusts.

The two testamentary trusts for the two brothers show a slightly different picture. Brother John died in August 1971 before the decedent and brother William died in May 1972, before any property had been transferred from executors to trustees. The will, however, did not leave direct legacies to the brothers or to their issue. The will directed the *trustees* to distribute to the issue upon the termination of the trust either upon the death of a brother after the testator or because a brother died before the testator. In theory, therefore, as to both brothers the trust corpus would pass from the executors to the trustees and by them be distributed to the issue of the brothers. It cannot be determined whether the Trust Company transferred any property to itself as trustee in respect of the two brothers. It did segregate some property for distribution to their issue, in a fashion similar to that used for the trusts for the widow and daughters. The records of the Trust Company might show that there was no designation of the accounts as trust accounts but simply as accounts for the issue. In any event, only a *part* of the property provided for by the will was segre-

gated in respect of the issue of the two brothers.

It appears from the account submitted to the Probate Court that down to April 22, 1975 the Trust Company had transferred from the executors to the trustees roughly one-half of the corpus of the five trusts and had segregated roughly one-half of the property distributable to the issue of the brothers. Title to the other half of the residuary estate remains in the executors.

On April 12, 1976, defendant presented to the Probate Court for allowance an account. 21 CGSA § 45–267 The account is to April 22, 1975, and presumably is an interim account. The other executor, Mrs. Rousseau, was asked to sign and swear to the account but declined to do so.

It will have been noted that the account was filed on the same day that the complaint was filed to commence this action. It is insisted for plaintiffs that the account was filed later in the day than the complaint.

### 7a.

The claim in the first count is against defendant both as executor and as trustee of the testamentary trusts. No separation is made as between the damages sustained by the acts of defendant in each capacity. The claim is simply that defendant improperly retained three stocks "as assets of Mr. Rousseau's estate and trusts" and thereby caused a money loss to plaintiffs of more than three million dollars (complaint para 20). The prayer for relief on this count is for an award of money damages "in an amount in excess of $3,000,000" to "all plaintiffs, jointly and severally . . . plus interest".

It is evident that plaintiffs have deliberately chosen to ask for money damages only, as an attempt to show federal jurisdiction and to secure a jury trial. This was stated at oral argument (SM 33). It enables them to say, as they do say (Brief, p. 22): "This is an action in personam for damages only". It enables them also to invoke the statement of Judge Mansfield that "federal diversity jurisdiction may be assumed over a suit to enforce a claim in personam against an executor which will not disrupt the probate court's administration of the estate". *Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir. 1972)

But it is apparent from the scheme of the will that money damages could never be calculated and distributed by a jury to each plaintiff.

The plaintiffs share in the residuary estate but as beneficiaries of seven testamentary trusts to be set up according to complicated formulas. If defendant is liable for misconduct, the damages must be paid to the estate and treated as a part of that estate in accordance with the will. No possible justification is seen for any money judgment in favor of individual plaintiffs. This difficulty of their theory of recovery is perceived by counsel for plaintiffs who suggest (Brief, p. 41) that "the Court and jury may fashion the appropriate relief".

Whatever the theory of recovery may be, plaintiffs do not distinguish between defendant as executor and defendant as trustee—either as to period of time, as to amounts of damages, or otherwise.

While the jurisdictional principles seem to be the same as to each capacity, it may be well to discuss separately the claim against defendant as executor and the claim against defendant as trustee.

### 7b.

It is clear that the claim against defendant as executor is for its conduct in that capacity since April 4, 1972, when the will was admitted to probate and letters testamentary were issued by the Connecticut Court.

■ It is equally clear that this is a claim which under Connecticut law is within the exclusive jurisdiction of the Probate Court as a part of the accounting required of an executor.

■ While the Probate Court in Connecticut is a statutory court of limited jurisdiction, as opposed to the constitutional and general jurisdiction of the Superior Court,

judicial and text book authority establish that the settlement of the estates of decedents, including decision of claims that the executor has mismanaged the estate, is for the Probate Court alone and no other Court in Connecticut may properly entertain such matters.

"Executors and administrators are charged with the duty of settling estates, over which courts of probate have sole and *exclusive* jurisdiction". *Prindle v. Holcomb,* 45 Conn. 111, 122 (1877; emphasis supplied)

"The superior court cannot exercise a primary jurisdiction which by the statute is reposed in the courts of probate. It can settle an account only on an appeal from doings of the court of probate, and then only so far as it can without exercising a power vested *exclusively* in the court of probate". *First Nat. Bank v. McCoy,* 124 Conn. 111, 198 A. 183, 184–185 (1938; emphasis supplied)

The standard text on Connecticut estate administration makes it plain that the court of probate has exclusive jurisdiction over all matters in respect of the settlement of estates. 1 Locke and Kohn, Connecticut Probate Practice, pp. 129–133

■ Plaintiffs argue that Connecticut law does not give exclusive jurisdiction to the probate court. Plaintiffs do not distinguish, however, between the administration of an *estate* and the administration of a *testamentary trust.* The Connecticut authorities on which plaintiffs rely deal with testamentary trusts, as to which there is concurrent jurisdiction in the superior courts and the courts of probate. Such, for example, is the decision by Judge Smith in *Matthies v. Seymour Mfg. Co.,* 23 F.R.D. 64, 77–83 (D.Conn.1958) reversed on other grounds, 270 F.2d 365 (2d Cir. 1959). In *Kimball v. New England Trust Co.,* 68 F.Supp. 95 (D.Mass.1946), the claims were against an executor and trustee but the opinion discusses nothing except the testamentary trust. If the decision be read to imply that the jurisdiction of the Probate Court in the settlement of estates is not

exclusive, the decision is believed to be in error and will not be followed.

## 7c.

■ Even if diversity jurisdiction exists in all respects, "a federal court has no jurisdiction to probate a will or administer an estate". *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) The reason is partly historical in that the equity jurisdiction conferred on federal courts in the Judiciary Act of 1789 was that of the English Court of Chancery at that time and the jurisdiction of the English Court of Chancery did not extend to probate matters; these were within the jurisdiction of the ecclesiastical courts. The reason must also be to promote "the harmonious cooperation of federal and state tribunals". *Princess Lida v. Thompson,* above cited, at page 466, 59 S.Ct. at page 281

As between claimants to an estate (or part of it) being administered in the state court, a federal court may have in personam and subject matter jurisdiction of the rival claims and adjudicate between them. Such was the situation in *Markham v. Allen,* above cited. In such a situation, there is no interference with the estate proceedings as such.

In the case at bar, however, there are no rival claimants. No one disputes the interest of plaintiffs in the estate. The issue is whether an executor can be called to account in a federal court while the estate is being administered in a Connecticut probate court and the executor required to account there.

The situation here is like that in *Starr v. Rupp,* 421 F.2d 999 (6th Cir. 1970) where it was held that there was no jurisdiction of the subject matter. Starr, a beneficiary under a will, sued Rupp "as executor and individually, for alleged mishandling of the assets of the estate of the decedent" (421 F.2d at 1000). Diversity of citizenship was the basis of jurisdiction. The claim had been litigated in the state probate court to a decision against Starr. The Court of Appeals did not decide on the ground of res judicata, however, but on lack of jurisdic-

tion. It was held that an accounting in the probate court was the means by which those interested in the estate "may establish the liability of the fiduciary for any breach of his duties". 421 F.2d at 1006–07

Similarly, in a suit against an administrator of a Massachusetts estate, the First Circuit Court of Appeals declared: "If the issues presented by the complainant involve a consideration-of the actual handling of the trust property by the fiduciaries, then the federal courts would appear to have no jurisdiction". *Kittredge v. Stevens,* 126 F.2d 263, 267 (1942), cert. denied 317 U.S. 642

#### 7d.

■ There is no jurisdiction of the subject matter of the first count in respect of its claims against defendant as executor.

#### 8.

As noted before, the first claim is against defendant as testamentary trustee as well as executor. In this aspect, it must be examined whether there is jurisdiction in this Court of the subject matter.

#### 8a.

■ There is no doubt but that in Connecticut probate courts have jurisdiction over testamentary trustees and their accounts. 21 CGSA §§ 45–4, 45–267 This is not—as with the administration of an estate—exclusive of the equity jurisdiction of the Superior Court, a court of general jurisdiction, but is concurrent with the Superior Court. *Dettenborn v. Hartford Nat. Bank,* 121 Conn. 388, 185 A. 82 (1936) It has been said, however, that "Courts of Probate have *primary* jurisdiction over the accounts of testamentary trustees". *Willard v. McKone,* 155 Conn. 413, 232 A.2d 322, 324 (1967; emphasis supplied)

· The Probate Court is directed by statute to require all testamentary trustees "to render accounts of their trusts under oath annually to the court of probate . . . .". 21 CGSA § 45–268 The Probate Court is also by statute given power "to call . . trustees . . . to account for and con-

cerning the estates entrusted to their charge . . . .". 21 CGSA § 45–4

The estate of H. H. Rousseau has been in administration in the Probate Court since March 14, 1972, and defendant Trust Company has been before that Court since that date. The property of the estate has thus been under the control and supervision of the Probate Court since that time.

The present account filed on April 12, 1976, by defendant is for its administration as executor only; it does not include any account as testamentary trustee. The account does show, however, the partial transfer already described from executor to trustees of five of the testamentary trusts and to the issue of the two brothers. These transfers have never been approved by the Probate Court and, as part of the accounting, could by that Court be ordered reversed.

Whether defendant has ever acted as trustee so as to require it to respond to a claim against it in that capacity is very unlikely. All that it has ever done is to permit the transfer to it as trustee by it as executor of some of the property it represents to be part of the testamentary trust. These transfers were made, however, before it was qualified to act as a testamentary trustee.

It would also seem that the testamentary trusts cannot come into existence until the final accounting of the executor and some order of the Probate Court determining the corpus of the trusts and approving transfers of the corpus to the trustees.

Where the same person is executor and trustee, a standard text states: "The normal orderly procedure would seem to be that the executor account and be discharged and that thereafter the same party qualify as trustee and begin the trust administration". Bogert, Trusts & Trustees § 583 (pp. 229–230)

"The title to the trust fund under the will of Mrs. Carlisle and the right to receive it *upon the distribution of the estate* was in the trustees appointed by her." *Geenty v. Phoenix Ins. Co.,* 127

Conn. 107, 14 A.2d 720, 723 (1940) (emphasis supplied)

"The corpus of the trust had been established prior to 1940 upon the settlement of the estate." *Phillips v. Moeller*, 147 Conn. 482, 163 A.2d 95, 96 (1960)

When therefore the defendant Trust Company is before the Probate Court as Executor, that Court can give complete relief for the claim in the first count.

If, however, relief is required against defendant as trustee the Probate Court equally has jurisdiction to give relief against it in that capacity.

### 8b.

In any event, under *Princess Lida*, above cited, this Court has no jurisdiction of the subject matter of claims against defendant as trustee.

*Princess Lida* involved a Pennsylvania inter vivos trust. The trustees filed a second interim account in a state court. This invoked the jurisdiction of the state court; there was not then any prior pending proceeding. On the next day two of the trust beneficiaries commenced an action in a federal district court against the trustees for mismanagement of the trust funds. The Supreme Court decided that the federal court was without jurisdiction of the subject matter. This was because the state court had first assumed jurisdiction over the trust property and could maintain that jurisdiction to the exclusion of the federal court. The Supreme Court said (305 U.S. at 466–67, 59 S.Ct. at 280–81):

" . . . if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals. While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court, this is not such a case. No question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it. *The contentions are solely as to administration and restoration of corpus.*" (Emphasis supplied)

The Connecticut probate court had assumed jurisdiction over the property in the estate including that distributable to the testamentary trusts, long before the commencement of this action in this Court. The *Princess Lida* principle controls and this Court has no jurisdiction over the claims against defendant as trustee any more than it has jurisdiction over claims against it as executor.

The time of day when the account was filed is thus unimportant because—unlike in *Princess Lida*—it was not the filing of the account which invoked the jurisdiction of the state court.

Even if the time of filing of the account had some significance, it was filed on the same day this action was commenced and that it may have been filed some minutes or hours after this action had been commenced should not, under all the circumstances here, control the result.

### 8c.

If, contrary to my conclusion, this Court does have jurisdiction of the claim against defendant as trustee, then it should abstain from deciding it and should dismiss.

The claim against defendant as trustee is intertwined with the claim against defendant as executor. It is a relatively insignificant part of the overall claim against defendant. As indicated, defendant very likely has never acted as trustee and if it has done so it is in respect of only one of the three stocks of which complaint is made. It would be most inefficient judicial administration to retain here a claim involving some acts as trustee while dismissing, as we must, a much more extensive claim involving acts as executor. This seems to be another case for the application of the abstention principle suggested by Judge Friendly in *Phillips etc. v. Rosenstiel*, 490 F.2d 509, 512–517 (2d Cir. 1973)

In this connection, it has been said (*Bassler v. Arrowood*, 500 F.2d 138, 142 (8th Cir. 1974), cert. denied sub nom. *Lee v. Arrowood*, 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975):

"The area of probate and decedents' estates presents many varied problems. State courts deal with these problems daily and have developed an expertise which should discourage federal court intervention. These local problems should be decided by state courts."

In the Third Circuit, an action was brought alleging mismanagement of the corpus of an inter vivos trust. *Thereafter*, the trustee invoked the jurisdiction of the probate court by submitting accounts. Because this came *after* the federal action, it was held that *Princess Lida* could not be applied. Dismissal of the action was affirmed, however, on the abstention principle (*Reichman v. Pittsburgh Nat. Bank*, 465 F.2d 16, 18 (3d Cir. 1972)):

"We agree that the facts here demonstrate a proper case for abstention. However, we do not justify that conclusion on whatever authority federal courts might possess to stay proceedings properly before them. Instead, we rely on the substantial identity of the issues raised in Orphans' Court with those presented in the district court and the special ability of the state court to decide those issues in view of its exclusive state jurisdiction over trusts and estates. We also think that administrative efficiency and convenience would best be served by permitting adjudication in the court having jurisdiction over both plaintiff and his fellow beneficiaries."

*Beach v. Rome Trust Co.*, 269 F.2d 367 (2d Cir. 1959) may look the other way but it is very uncertain. It is difficult to know which claims were found to be within the jurisdiction and which without, but "claims of breach of trust and mismanagement" (269 F.2d at 373) may have been allowed to proceed in the federal court. If so, the case seems distinguishable from that at bar in that the conflict was there between a federal court in New York and a probate court in New York, all parties being domiciled in New York; whereas here this Court is in New York and the probate court administering the estate is in Connecticut, where the decedent was domiciled. Moreover, the claim in the federal court of breach of trust was solely against a trustee of a testamentary trust as such, whereas here the claim is primarily against an executor as such of an estate which is being administered in a Connecticut probate court. In *Phillips v. Rosenstiel*, above cited, Judge Friendly found the *Beach* decision distinguishable and the principles laid down by Judge Friendly seem a safer guide to decision here.

### 8d.

There is no jurisdiction of the subject matter of the first count in respect of its claims against defendant as trustee and if there were such jurisdiction this Court should abstain from its exercise.

### 9.

We have been looking to Connecticut law in certain respects because the decedent was domiciled there and his estate is being administered there.

█ This is a diversity case and we sit in New York. In diversity cases the federal courts must follow conflict of law rules prevailing in the states in which they sit. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)

**460**

The administration of a testamentary trust is governed by the law of the state designated by the testator to govern its administration and if there be no such designation is governed by the law of the state of the testator's domicile at death. Restatement (Second) Conflict of Laws § 271

The administration of the estate of a decedent is governed by the law of the state of the decedent's domicile at death. Restatement (Second) Conflict of Laws § 314 and following.

The estate is being administered in Connecticut, the state of domicile, and there is every reason to believe that a New York state court, in an action such as that at bar, would look to the law of Connecticut.

Matters of administration include "the liabilities which may be incurred by the trustee for breach of trust". Restatement (Second) Conflict of Laws § 271, p. 172

The matters in controversy in the case at bar, whether tried in Connecticut or in this Court, are governed by Connecticut law.

10.

The claim in the third count is by the issue of the two deceased brothers of decedent, remaindermen of the two trusts in Article Eighth E(2) and (3) of the will.

There is no averment in the complaint that anything has ever been transferred from the executors to the trustees in respect of these trusts. The showing outside the pleading would indicate that accounts had been created on the books of defendant in the names of the issue of the two brothers.

It thus appears that the claim in the third count must be against defendant solely as executor.

Whether the claim be against defendant as executor or as trustee, there is no jurisdiction in this Court over the subject matter, for the reasons already given in respect of the claim in the first count. If there were jurisdiction, this Court should abstain from its exercise.

11.

The claim in the second count is by the beneficiaries of the four inter vivos trusts and relates to them only. They were established in New York, are said by the trust instruments to be New York trusts, and by the same instruments are directed to be administered in accordance with New York law.

There appears to be no ground for dismissal of this claim and it appears to be within the jurisdiction of this Court.

The motion is granted to the extent that the first and third counts are dismissed for the reasons above given; the motion is otherwise denied. Settle order on notice, which order may provide for entry of final judgment as provided in Fed.R.Civ.P. 54(b).