A. Victor BARNES, Plaintiff,

v.

Douglas W. BRANDRUP, Griggs Baldwin & Baldwin, and Douglas W. Brandrup, Martin W. Issler, and Weaver W. Dunnan, as Executors of the Estate of Donald R. Baldwin, Defendants.

No. 79 Civ. 5989.

United States District Court, S. D. New York.

Jan. 9, 1981.

---

Willkie, Farr & Gallagher, New York City, for plaintiff; William T. Sullivan, Richard E. O'Connell, New York City, of counsel.

Bergreen & Bergreen, New York City, for defendant Douglas W. Brandrup; Clark J. Gurney, New York City, of counsel.

Shearman & Sterling, New York City, for defendant Estate of Donald R. Baldwin; Clarence W. Olmstead, Jr., Charles B. Manuel, Jr., New York City, of counsel.

Schreiber, Klink, Schreiber & Lehnardt, New York City, D'Amato & Lynch, New York City, for defendant Griggs Baldwin & Baldwin; James P. Schreiber, Richard G. McGahren, New York City, of counsel.

SOFAER, District Judge:

This is a diversity action brought by A. Victor Barnes, the sole beneficiary and distributee of both an *inter vivos* and a testamentary trust established by his father, against Douglas W. Brandrup, a successor trustee of the trusts; Griggs Baldwin & Baldwin, a law firm in which defendant Brandrup is a partner; and the executors of the estate of Donald R. Baldwin, a late partner of the defendant law firm.[1]  Plain-

---

1.  Plaintiff is a citizen of Florida.  Defendant Brandrup is a citizen of New Jersey.  Defend-

ant Griggs Baldwin & Baldwin is a partnership organized and existing under the laws of New

tiff alleges numerous counts of breach of fiduciary duty and mismanagement of the trusts, seeking, *inter alia*, damages, an accounting, and reimbursement of various fees, commissions, and compensation received by the defendants. Defendants have moved to dismiss for lack of subject matter jurisdiction, and in the alternative for an order abstaining from exercising jurisdiction during the pendency of proceedings in the Connecticut Probate Court. The motion is denied.

Plaintiff's father, A. Victor Barnes, Sr., a Connecticut domiciliary, established an *inter vivos* trust in 1935. It provided that income from the trust property be paid to his wife (plaintiff's mother) during her lifetime, and that upon her death the corpus be paid to plaintiff. Plaintiff's father died in 1944. By his will, executed that year, plaintiff's father established a testamentary trust, which provided that the income of the trust property be shared by plaintiff and his mother during her lifetime, and that upon her death the corpus be paid to plaintiff. Plaintiff's father's estate was settled, and a final account allowed, in the Connecticut Probate Court (District of New Canaan) on July 20, 1949.

Defendant Brandrup was appointed successor trustee for both trusts in 1974. Plaintiff and his mother were the other trustees of the testamentary trust, and plaintiff's mother was the other trustee of the *inter vivos* trust. Accounts for the testamentary trust were filed with the Probate Court for each year from 1954 through 1975 and duly settled; no proceedings were thereafter held concerning that trust between 1975 and the commencement of this action. An account for the *inter vivos* trust was filed in 1973 and approved by the probate court; no accounts for the *inter vivos* trust were filed between 1973 and the commencement of this action.

In 1978, plaintiff's mother died. Plaintiff commenced this action on November 7, 1979. On November 15, 1979, defendant Brandrup filed a final account for the *inter vivos* trust in the Connecticut Probate Court for the District of New Canaan, and on December 6, 1979, he filed a final account for the testamentary trust.

In a letter dated December 6, 1979, New Canaan Probate Judge Penfield C. Mead stated that the allegations at issue in the federal action "are serious and frankly are not the sort that should be litigated in this [Probate] Court." He noted two options: "One is for this Court to defer to the federal proceeding and continue both accounts until the federal proceeding has been terminated .... The other choice is for this Court to enter a peremptory decision on both accounts and let the aggrieved party take its appeal to the Superior Court ...." He scheduled a hearing for January 9 "at which time I will decide which of the two proceedings to follow and if it is the second, I will at that time allow both accounts." On January 2, 1980, Judge Mead adjourned the hearings "until reclaimed by any interested party"; he allowed neither account, apparently choosing the former of the two options he identified.

## I. *Subject Matter Jurisdiction*

These facts present the recurrent problem of defining the limits of a federal court's diversity jurisdiction over matters that are, at least in part, subject to the jurisdiction of a state's probate court. *See generally* Vestal & Foster, *Implied Limitations on the Diversity Jurisdiction of Federal Courts*, 41 Minn.L.Rev. 1, 13–23 (1956); Note, *Federal Court Probate Proceedings*, 45 Ind.L.J. 387 (1970). Historically, the jurisdiction of state courts over strict probate proceedings has been exclusive. The equity power conferred on federal courts by the Judiciary Act of 1789 and subsequent enactments included only that power held by the English Chancery Court in 1789; because the probate of wills and the grant of letters

York, with its principal offices in New York. The only partner in the firm other than defendant Brandrup is a citizen of New York. The trustees of the Estate of Donald R. Baldwin are citizens of New Jersey and the District of Columbia. Letters testamentary were issued in New Jersey, Baldwin's domicile at his death.

of administration were functions performed in England by the ecclesiastical courts, federal courts lack the power to probate or administer a will. *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 1186–89 (2d ed. 1973).[2]

This action, however, involves a probate court's jurisdiction over trusts, not wills; plaintiff's father's estate was settled over thirty years ago. The historical limitation on the exercise of diversity jurisdiction is therefore inapplicable. Controversies concerning trusts were not in 1789 part of the exclusive jurisdiction of the ecclesiastical courts. And "it was early established that as to controversies that were not then [in 1789] regarded as probate matters federal jurisdiction could not be ousted by the mere internal arrangement of the state courts...." *Beach v. Rome Trust Co.*, 269 F.2d 367, 373 (2d Cir. 1959).

Nevertheless, a federal court's power to adjudicate cases in which its diversity jurisdiction overlaps the jurisdiction of a state probate court may be limited by other principles of equity. *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), established that in some circumstances a federal court lacks jurisdiction to adjudicate the merits of a case even though the requisites of diversity jurisdiction have been met.

*Princess Lida* was an application by beneficiaries of an *inter vivos* trust to have the Supreme Court reverse a determination by Pennsylvania courts that they had exclusive jurisdiction over claims of trustee mismanagement. The trustees had filed a partial accounting in Pennsylvania's Court of Common Pleas on July 7, 1930. Two of the beneficiaries commenced an action on the next day in the United States District Court for the Western District of Pennsylvania, charging the trustees with misman-

agement, asking that they be made to account and to repay losses, and praying for their removal. The Court of Common Pleas thereafter enjoined the beneficiaries from proceeding in federal court, and that decision was affirmed by the Pennsylvania Supreme Court.

The question before the United States Supreme Court on review was "whether the exercise of jurisdiction by a state court over the administration of a trust deprives a federal court of jurisdiction of a later suit involving the same subject matter." 305 U.S. at 457, 59 S.Ct. at 277. To answer that question, the Court concentrated on the Pennsylvania Law defining the Common Pleas Court's jurisdiction over trusts. The Supreme Court found that, under Pennsylvania law, the filing of the account in the Common Pleas Court invoked that court's exclusive jurisdiction over the administration of the trust and that proceedings pursuant to that jurisdiction were *quasi in rem*. The Court therefore applied the settled principle of equity that when "two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.... The doctrine is necessary to the harmonious cooperation of federal and state tribunals." *Id.* at 466, 59 S.Ct. at 280 (footnotes omitted). The prior filing of the state action had vested the state court with jurisdiction over a *quasi in rem* proceeding; because that court "could not effectively exercise the jurisdiction vested in it, without a substantial measure of control of the trust funds," *id.* at 467, 59 S.Ct. at 281, jurisdiction of the Pennsylvania court was deemed exclusive and its injunction against the federal proceeding was upheld.

The present suit must be classified as *quasi in rem*, and it is therefore subject to

---

**2.** Significantly, that exception to the federal court's equity jurisdiction does not extend to suits brought *in personam* against executors that will not interfere with the *in rem* adminis-

tration of an estate. *See, e. g., Markham v. Allen, supra; Lamberg v. Callahan*, 455 F.2d 1213, 1216 (2d Cir. 1972).

the rule of *Princess Lida*.[3] Both the federal and the state proceedings involve the management of trusts, and both seek forms of relief essentially identical to those sought by the trustees and beneficiaries in the *Princess Lida* litigation. Given that only one court may act, which court should it be?

The Court in *Princess Lida* relied upon three factors in concluding that the state court's jurisdiction was exclusive. The first factor was timing: the trustees' state court action for an accounting was filed prior to the federal suit brought by the beneficiaries for mismanagement. The accountings and other proceedings that had occurred in state court in prior years had not conferred continuing jurisdiction on the state courts, for each prior matter had been adjudicated and the trust *res* had revested in the trustees. Nevertheless, the Supreme Court repeatedly emphasized that the July 7, 1930 petition for an accounting was filed one day prior to the federal action. The other two factors involved the effectiveness and exclusivity of the state proceeding: the state court in which the first-filed action was commenced was vested by state law with the power to adjudicate all the claims presented effectively and exclusively. The Supreme Court analyzed in detail the applicable Pennsylvania law, which clearly vested adequate and exclusive powers in the Court of Common Pleas to adjudicate all claims and to render all relief requested.[4] That the state court regarded its own jurisdiction as exclusive was also apparent from its having enjoined the beneficiaries from continuing with their federal suit.

The present case differs from *Princess Lida* with respect to each of the three relevant factors. Here, the federal action was the first filed; the Connecticut Probate Court lacks the power to adjudicate all the claims effectively; and that court also lacks exclusive jurisdiction under Connecticut law.

### A. Timing

Under *Princess Lida*, jurisdiction and control over the trust corpus must be invoked by the state court *prior* to commencement of the federal action in order to divest the federal court of its diversity jurisdiction. *See, e. g., Reichman v. Pittsburgh National Bank*, 465 F.2d 16, 18 (3d Cir. 1972); *Beach v. Rome Trust Co., supra*, 269 F.2d at 373. Plaintiff argues that the Connecticut probate court did not assert jurisdiction over the trusts in this case until the final accounts were filed in that court—which occurred after the filing of the federal complaint. Defendants counter that the probate court had continuing jurisdiction over the trusts by virtue of accounts previously filed. The answer turns upon Connecticut law governing the nature and extent of the relevant state court's jurisdiction. *See Matthies v. Seymour Manufacturing Co.*, 23 F.R.D. 64, 80 (D.Conn.1958), *rev'd on other grounds*, 270 F.2d 365 (2d Cir. 1959), *cert. denied*, 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 544 (1960).

■ Connecticut probate courts have no common law jurisdiction; they act only as authorized by statute. *Palmer v. Hartford National Bank & Trust Co.*, 160 Conn. 415, 279 A.2d 726, 733–34 (1971). Nothing in the

---

3. The *Princess Lida* Court noted several circumstances in which federal jurisdiction would have existed. Had both suits been personal actions, the Court explained, both the federal and state courts could have proceeded simultaneously, until one action was complete and therefore binding on the other. Furthermore, even if the state action involved some tangible property, and was therefore *in rem* or *quasi in rem*, the federal court could proceed to resolve suits seeking only a declaration of rights in the *res* or trust. Such suits, the Court stated, were permissible because they did not interfere with the state court's possession and control of the property. But where both suits were *in rem* or

*quasi in rem*, jurisdiction could only exist in one forum so that effective relief might be rendered.

4. The Supreme Court relied upon the Pennsylvania Supreme Court's description of the Court of Common Plea's power: " 'The scope of supervisory control of necessity includes any matter which concerns the integrity of the trust res—its administration, its preservation and its disposition and any other matter wherein its officers (trustees) are affected in the discharge of their duties.' " 305 U.S. at 462, 59 S.Ct. at 279 (footnote omitted).

relevant statutes supports defendants' contention that the probate court retains continuing *quasi in rem* jurisdiction and control over trusts and their assets merely because they are subject to that court's administration. The probate court in Connecticut has the usual powers over trusts vested in such courts, such as the power to require probate bonds from testamentary trustees, to appoint a trustee when none is named in a will, and to fill vacancies caused by the death, resignation, or incapacity of a named trustee. Conn.Gen.Stat.Ann. §§ 45–83, 45–84. Nothing about these powers suggests that the court retains, or needs to retain, control over the trust corpus when none of the particular powers is being exercised. Probably the most significant power of the probate court is its control over the rendering of trustees' accounts. *Id.* §§ 45–4, 45–267. But the statute sets forth in great detail the steps that are necessary to invoke that jurisdiction. *Id.* § 45–268. The statutory structure indicates that, during periods in which the jurisdiction of the probate court is not actually invoked, control of the corpus is unnecessary for the court to carry out its duties and so remains vested in the trustees; the trustees are empowered by statute to manage and invest the trust property without resort to court order. *Id.* § 45–88.

The sole suggestion to the contrary is section 45–267, which refers to the probate court's lack of "continuing jurisdiction" over *inter vivos* trusts. This provision appears to mean that, with respect to an *inter vivos* trust, jurisdiction over the trust is not limited to a single probate court. Although "continuing jurisdiction," in this sense, may exist over testamentary trusts, that is not tantamount to providing that the court will continuously exercise jurisdiction over the trust corpus. To divest the federal courts of jurisdiction, the state court must not only be empowered to exercise jurisdiction, it must actually have done so. Defendants have referred the Court to nothing in Connecticut law or practice to reflect that "continuing jurisdiction" over testamentary trusts under section 45–267 means that the trusts remain continuously before the probate court for all purposes.

Here—as in *Princess Lida* itself—the mere existence of power to supervise the administration of a trust does not mean that jurisdiction is in fact being exercised; some affirmative steps by the trustee or court are required for jurisdiction to attach over the corpus. Accountings were filed in 1973 and 1975. But the situation is similar to that under Pennsylvania law described in *Princess Lida*. Following the settlement of an account "the corpus is reawarded to the trustee for further administration . . . of the trust." 305 U.S. at 464, 59 S.Ct. at 279. Nothing happened in connection with the trusts in this case between settlement of the 1975 accounting and the filing of the federal complaint. The federal action was therefore first filed.[5]

### B. *Effectiveness and Exclusivity*

Central to the holding in *Princess Lida* was the Court's conclusion that, as a matter of Pennsylvania law, the *quasi in rem* jurisdiction of the Court of Common Pleas was exclusive; once that court took control of

---

**5.** Defendants refer to a statement in *Matthies v. Seymour Manufacturing Trust Co. of New York, supra,* 23 F.R.D. at 78, in which then-District Judge Smith noted, in a case also involving the *Princess Lida* rule, that the probate court in Connecticut "has exercised jurisdiction" over two testamentary trusts for a number of years. That statement, read in context, is no more than an assertion that the court had conducted interim accountings over the years. Nor does *Rousseau v. United States Trust Co. of New York,* 422 F.Supp. 477 (S.D.N.Y.1976), support defendants' claim that the probate court has exercised uninterrupted jurisdiction and control over the trusts in this case. In that case, Judge Wyatt dismissed a federal suit brought during the pendency of Connecticut probate proceedings. In *Rousseau,* unlike the case at bar, the testamentary trust corpus remained part of an undistributed estate over which the probate court necessarily retained jurisdiction. The relative timing of the accounting and federal actions was of no consequence there, because it was the admission of the will to probate prior to the federal action which invoked the jurisdiction of the state court and gave it control over the *res.* Indeed, since the assets of the will had not been finally distributed, the testamentary trust may not even have come into existence. *Id.* at 457.

the trust corpus at issue, no court could interfere with that control. By contrast, under Connecticut law, the Superior Court (Connecticut's court of general jurisdiction) has concurrent jurisdiction with the probate court over the trust matters. Although the probate court's jurisdiction over accounts has been characterized as "primary", *Willard v. McKone*, 155 Conn. 413, 232 A.2d 322, 324 (1967), the Superior Court may assert its jurisdiction even after a final account has been filed in probate court, *Dettenborn v. Hartford-National Bank & Trust Co.*, 121 Conn. 388, 185 A. 82 (1936).

In *Dettenborn*, after a final account had been presented in the probate court, the beneficiary of a testamentary trust sued the trustee in Superior Court alleging various breaches of trust and seeking damages and an accounting. The Connecticut Supreme Court of Errors noted that, although an accounting was "the very relief which the statutes make it the duty of the court of probate to afford, . . . [t]he jurisdiction of courts of probate to pass upon the accounts of a testamentary trustee is not . . . exclusive, and courts of general jurisdiction may entertain actions against trustees for breaches of their duty, the jurisdiction of the two courts being concurrent." 185 A. at 84. Of particular importance to the Supreme Court of Errors in reaching this result was the fact that the probate court lacked the power to secure all rights claimed by that plaintiff, including the right to enforce an award against the trustee. The Court regarded the interest in consolidating all the issues involved in litigation over a trust in one competent tribunal as so significant that it permitted the Superior Court in effect to divest jurisdiction from the probate court over an earlier filed accounting.

The jurisdiction of Connecticut's probate courts has been extended since *Dettenborn*, but the decision's vitality is undiminished. *See, e. g., Roessler v. Connecticut National Bank*, 34 Conn.Supp. 136, 380 A.2d 541, 542 (1977). A probate court remains without power to award money damages if an accounting indicates that damages are due, and it cannot adjudicate complex legal

questions that are subject to the broad jurisdiction of a general court of equity. *Palmer v. Hartford National Bank & Trust Co., supra*, 279 A.2d at 734; *Phillips v. Moeller*, 147 Conn. 482, 163 A.2d 95, 98 (1960).

In Connecticut, control over the trust corpus and the *quasi in rem* fiction have been accorded less weight than the policy of adjudicating the trust issues in one competent forum. Indeed, the Connecticut Supreme Court has suggested that in some instances the court of general equity jurisdiction might enjoin the probate proceedings "in order to prevent unnecessary duplication and to preserve the full advantages of the equitable remedy." *Phillips v. Moeller, supra*, 163 A.2d at 99. In this very case, in fact, the probate court has expressly disclaimed adequate power to resolve all the issues and grant all the relief sought. The federal court in diversity, on the other hand, has all the powers of Connecticut's court of general equity jurisdiction, which Connecticut has made clear are adequate to adjudicate the issues fully. The same Connecticut policy that allows for full adjudication in a single proceeding of all issues concerning a trust, despite potential interference with a pending probate proceeding, should permit a federal court possessing full equity powers to assume jurisdiction. Under these circumstances, federal jurisdiction has been held to exist. *Matthies v. Seymour Manufacturing Co., supra*, 23 F.R.D. at 82–83; *Kimball v. New England Trust Co.*, 68 F.Supp. 95, 97–98 (D.Mass.1946).

The decision of the Court of Appeals for the Second Circuit in *Beach v. Rome Trust Co., supra*, does not require a different result. There, jurisdiction over an estate had attached in the New York Surrogate's Court. Plaintiff argued that the federal court could nevertheless assume jurisdiction over certain claims involving the res because the New York Supreme Court had coordinate jurisdiction with the Surrogate's Court over the claims. That the Surrogate's Court lacked exclusive jurisdiction was not enough to justify ousting that court, however, for "it is apparent that the

Supreme Court [of New York] would itself decline jurisdiction of these claims in favor of the Surrogate's Court provided only that it appeared that the Surrogate was empowered to give full relief. . . . " It is the policy of the New York courts to concentrate in the hands of the Surrogate all matters affecting the administration of estates, and this policy appears to proceed from, or indeed to define, the nature of the Surrogate's jurisdiction as *quasi in rem*." 269 F.2d at 372. Here, by contrast, the Connecticut probate court lacks powers necessary to adjudicate all the claims, and the Connecticut Court of General Sessions would have assumed jurisdiction had it been called upon to do so.

Defendants argue finally that, while a federal court in Connecticut might be entitled to assume jurisdiction over this litigation, a federal court in New York may not. Federal District Courts have in some contexts, such as venue, been assumed to be more familiar with the law of the state in which they are located than are District Courts located in other states. But this consideration cannot be used to deprive a particular federal court of the authority to decide an action otherwise properly before it. Some language in *Rousseau v. United States Trust Co.*, 422 F.Supp. 447, 459 (S.D. N.Y.1976), and *Matthies v. Seymour Manufacturing Co., supra*, 23 F.R.D. at 83, suggests that, although a federal court in Connecticut might have jurisdiction over a Connecticut probate matter, a federal court in New York has no jurisdiction because (unlike a federal court in Connecticut) it has no "coordinate" jurisdiction with the Connecticut Superior Court over the trust corpus. But these statements have no basis in Connecticut law.

This Court might indeed lack jurisdiction if Connecticut insisted upon exclusive control by courts within that state over all questions concerning trusts accounted for in that state, and if the courts of New York deferred to that policy by declining jurisdiction over such questions. But the only concern expressed by the Connecticut Supreme Court has been that plaintiffs in trust litigation be able to obtain full relief in a single forum—not that exclusive jurisdiction over all questions pertaining to Connecticut trusts remain in Connecticut. This Court has the same capacity to grant full relief as the federal court in the District of Connecticut. Furthermore, it appears certain that the New York Supreme Court would accept jurisdiction of this action, for many of the trust's assets are located in New York and the transactions complained of apparently took place in New York. *See, e. g., National City Bank v. Beebe*, 131 N.Y.S.2d 67 (Sup.Ct.1954), *aff'd*, 285 A.D. 874, 139 N.Y.S.2d 238 (1st Dep't), *appeal dismissed*, 308 N.Y. 60, 127 N.E.2d 100 (1955); Restatement (Second) of Conflicts § 267, comment C. Therefore, to the extent that a District Court's diversity jurisdiction must be measured by whether the courts of the state in which the District is located would accept jurisdiction, it is proper to proceed here.

## II. *Abstention*

Defendants argue that, even if this Court has subject matter jurisdiction, it should abstain. Defendants rely primarily on *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973), in which Judge Friendly stated that "there is particularly strong reason for abstention in cases which, though not within the [jurisdictional] exceptions for matters of probate and administration or matrimony and custody actions, are on the verge, since like those within the exception, they raise issues 'in which the states have an especially strong interest and a well-developed competence for dealing with them.'" *Id.* at 516 (citation omitted). That case involved a suit by a law firm for attorneys' fees growing out of a series of complex matrimonial litigations in the New York courts. The most significant factor warranting abstention was that deciding the case would require "exploration of a difficult field of New York law with which, because of its proximity to the exception for matrimonial actions, federal judges are more than ordinarily unfamiliar." *Id.* at 515.

Legitimate objections exist to diversity jurisdiction, and they seem especially strong in cases normally dealt with by specialized state courts. *See, e. g., Phillips, Nizer, supra,* 490 F.2d at 516; H. Friendly, *Federal Jurisdiction: A General View* 142–43 (1973). Nevertheless, Congress has retained diversity jurisdiction, and it must be exercised absent certain narrowly defined "exceptional circumstances." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

■ No exceptional circumstances are present here. The complaint presents a number of claims essentially alleging breach of fiduciary duty. Determining the facts in this case may be difficult, but the legal questions seem no more complex or unfamiliar than questions involving the obligations of fiduciaries faced by the federal courts in a variety of contexts. Although defendants protest that this case involves "numerous difficult issues of Connecticut law," Baldwin Estate Reply Memorandum at 9, they have not presented a single example substantiating that claim. In fact, this case seems closely akin to *Beach v. Rome Trust Co., supra,* 269 F.2d at 374, where the Second Circuit refused to abstain from deciding claims involving allegations of mismanagement and breach of trust because those claims involved "[n]o controlling or obscure issue of state law." Significantly, Judge Friendly, in ordering abstention in *Phillips, Nizer,* explicitly distinguished *Beach.* 490 F.2d at 516.[6]

Defendants' reliance on *Reichman v. Pittsburgh National Bank, supra,* and *Rousseau v. United States Trust Co. of New York, supra,* is similarly unpersuasive. In *Reichman,* the Court of Appeals for the Third Circuit ruled that the District Court should abstain in a suit involving management of a trust because substantially identical issues were before the Pennsylvania Orphans' Court, the state court specializing in

such matters. The Court noted that the Orphans' Court had a "special ability . . . to decide those issues in view of its exclusive state jurisdiction over trusts and estates," and that administrative efficiency would be furthered by allowing "adjudication in the court having jurisdiction over both plaintiff and his fellow beneficiaries." 465 F.2d at 18. Here, by contrast, no state suit is pending in which all issues could be resolved. The probate court, by its own admission, is incapable of adjudicating the claims presented in this forum and accordingly has deferred consideration of the pending accounts. Although suit could be brought by plaintiffs in Connecticut Superior Court, *see Dettenborn v. Hartford-National Bank & Trust Co., supra,* that court, unlike the Pennsylvania Orphans' Court, does not specialize in such matters. In contrast to *Reichman,* moreover, all interested parties are before this court, and it is questionable whether a Connecticut court would have personal jurisdiction over the defendant executors of the Estate of Donald R. Baldwin (citizens of the District of Columbia and of New Jersey), or of the defendant law firm, Griggs Baldwin & Baldwin (a New York partnership).

*Rousseau v. United States Trust Co. of New York, supra,* is also inapposite. There, Judge Wyatt was presented with claims against a defendant in his capacities as both an executor of the estate and a testamentary trustee. Jurisdiction clearly did not exist over the claims involving the estate, and the claim involving the trust was "a relatively insignificant part of the overall claim against defendant." Consequently, Judge Wyatt concluded that to retain the claims against the trustee "would be most inefficient judicial administration." 422 F.Supp. at 459. Here, jurisdiction exists over all the claims alleged, and abstaining to permit a suit to be brought in Connecticut would be both unprecedented and inefficient.

The parties suggested at oral argument that the Court consider authorizing an in-

---

**6.** That this case, unlike *Beach,* involves a Connecticut trust is not a significant factor in deciding whether to abstain, and Judge Wyatt's distinction of *Beach* on that ground in *Rousseau v. United States Trust Co. of New York,* *supra,* 422 F.Supp. at 459, is not persuasive. That fact may, at most, require routine inquiries into choice of law and possible application of Connecticut law concerning fiduciaries.

terlocutory appeal in this case, under 28 U.S.C. § 1292(b). An interlocutory review of the jurisdictional issues might insure that the time required to try this case would not be wasted. But certification is inappropriate here under the governing standards. *See, e. g., Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959); *Seidenberg v. McSorleys' Old Ale House, Inc.*, 308 F.Supp. 1253, 1261 (S.D.N. Y.1969). The questions presented, though obscure and complex, leave insufficient uncertainty as to their ultimate resolution. It seems clear that a federal court has jurisdiction over claims of trust mismanagement and breach of fiduciary duty, despite a later-filed accounting in a state court without adequate powers to grant all the relief sought and without exclusive state-court jurisdiction over the subject matter. As the late Judge J. Joseph Smith said in an analogous case, exercising jurisdiction under these circumstances causes "no injury ... to the 'harmonious cooperation of federal and state tribunals' referred to in the Princess Lida case...." *Matthies v. Seymour Manufacturing Co., supra*, 23 F.R.D. at 83.

The motion to dismiss is denied.

SO ORDERED.