**Priscilla Alden BEACH, Plaintiff-Appellant,**

v.

**ROME TRUST COMPANY, a domestic corporation, and Johnson D. McMahon, and Robert Beach, Administrator CTA of the Goods and Chattels of Estate of Carrie A. Beach, Deceased, Defendants-Appellees.**

**Priscilla Alden BEACH, Plaintiff-Appellant,**

v.

**J. Maynard JONES, Surrogate of Oneida County, State of New York; Rome Trust Company, a New York Banking & Trust Company; Johnson D. McMahon, individually and as Vice-President of Rome Trust Company; Director of Beach Lumber Company, a New York Corporation; Counsel for Rome Trust Company; Counsel for Beach Lumber Company; Counsel for Estate of Carrie A. Beach, Deceased; Counsel for Robert Beach; Counsel for Estate of Samuel H. Beach, Jr.; Robert Beach, individually and as Executor of Estate of Samuel H. Beach, Jr., Defendants-Appellees.**

Nos. 279-280, Dockets 25416-25417.

United States Court of Appeals Second Circuit.

Argued April 23, 1959.

Decided Aug. 17, 1959.

Robert L. Collins, New York City (Harry J. Coman, New York City, on the brief), for plaintiff-appellant.

James Griffin, Rome, N. Y. (O'Shea, Griffin & Jones, Rome, N. Y., on the brief), for defendant-appellee Rome Trust Co.

Johnson D. McMahon, Rome, N. Y., pro se and for defendant-appellee Robert Beach.

Donald L. Austin, for defendant-appellee J. Maynard Jones.

Before LUMBARD, Circuit Judge, and GALSTON and ANDERSON, District Judges.

LUMBARD, Circuit Judge.

These appeals are from orders of James T. Foley, J., in the District Court for the Northern District of New York declining jurisdiction in favor of the Surrogate's Court of Oneida County, New York, in a diversity action brought by the beneficiary of a testamentary trust which was created out of an estate then and now in the course of administration in the Surrogate's Court, against the administrator C.T.A., a testamentary trustee under letters of trusteeship issued by the Surrogate, and an attorney alleged to have participated with them in certain breaches of trust. In the first action Judge Foley declined jurisdiction. The second action was brought for an injunction against proceedings for an accounting in the Surrogate's Court, subsequently commenced by defendants, and

the cause was dismissed for the reasons which governed the first disposition.

We hold that as to those claims the prosecution of which would constitute an interference with the previously attached *quasi in rem* jurisdiction of the Surrogate's Court the district court's order of dismissal was correct; but that insofar as the plaintiff's claims would not interfere with such a prior jurisdiction, it was improper either to dismiss them, or to retain them and then abstain from the exercise of jurisdiction. We hold further that for the reasons set forth at length in Sullivan v. Title Guarantee & Trust Co., 2 Cir., 1948, 167 F.2d 393, Judge Foley correctly declined to enjoin the subsequently initiated proceedings in the Surrogate's Court.

The facts alleged in the complaint and taken as true for present purposes, are briefly as follows. Plaintiff's father, Samuel H. Beach, Sr., died testate in 1941 leaving a will which made his wife, Carrie A. Beach, the sole heir and distributee of his estate, but which, in provisions that would have been effective had Carrie predeceased Samuel, manifested an intention that the two children of Carrie and Samuel, the plaintiff, Priscilla Alden Beach, and Samuel H. Beach, Jr., share equally in the estate. Carrie Beach died on November 15, 1951 leaving a will which, according to the complaint, purported to carry out the wishes of Samuel, and therefore to divide the estate equally between Priscilla and Samuel, Jr. The will of Carrie, which is annexed to the complaint, provided in terms for outright gifts of personalty and realty to Samuel, Jr., for a gift in trust to Priscilla for life of common stock in the Beach Lumber Co. and one-half the residue of the estate, and for an absolute gift of the remaining one-half of the residue to Samuel, Jr. Under the terms of the trust the issue of Priscilla are remaindermen, but in default of such issue, Samuel, Jr. or his issue are designated. Under the terms of the trust the designated trustee, the Rome Trust Company, was instructed to vote the Beach Lumber Co. common stock "only as di-

rected by my son, Samuel H. Beach, Jr.," and was expressly given the power to retain investments held at the death of the testatrix and to invest the corpus without restriction to investments legal for trust funds in the State of New York.

Upon the death of Carrie, Samuel, Jr. became the administrator C.T.A. of her estate under the terms of the will which was admitted to probate February 26, 1952, and in 1953 the Rome Trust Company assumed its duties as trustee, receiving, amongst other securities, the common stock of Beach Lumber Co. Very shortly thereafter Samuel, Jr., died, and Robert J. Beach, his son, was named his administrator C.T.A., as well as administrator C.T.A. of Carrie's estate. None of the several fiduciaries thus involved with the assets of the estate of Carrie have as yet rendered an accounting despite plaintiff's demands that they do so. Plaintiff has received income in the amount of $1,500 per year from the trustee.

Johnson D. McMahon was counsel to Carrie Beach, and to Samuel Beach, Jr., and is presently counsel to and a director and vice-president of the Rome Trust Company, as well as counsel to and a director of the Beach Lumber Company. Robert J. Beach has succeeded his father as president of the Beach Lumber Company, and holds all the stock of the company which is not in the trust.

The correctness of the decision below necessarily turns upon the nature of the claims asserted in the complaint, and accordingly we now consider them in some detail. The complaint, which, as the district court noted, is very loosely drawn, alleges five causes of action against various combinations of defendants. The first cause of action seeks an accounting of the estate and of the trust to determine whether the trustee in fact received the proper portion of the residue, it being alleged on information and belief that the total estate of Carrie was in the neighborhood of $300,000. Plaintiff in part derives this figure from the fact that the estate of Samuel, Jr. was valued at about $200,000. She apparently asserts that the trust estate should be about equal to this sum, although it is not alleged that Samuel, Jr. was without other income, and it appears from affirmative allegations that he served actively as chief officer of Beach Lumber Company. While the complaint refers to plaintiff as if she were the legal and equitable owner of one-half of the Carrie estate, there is no allegation that she is anything other than a life beneficiary of the trust established by the will. Plaintiff sets forth her income from the trust as $1,500 per year, and alleges that as against the supposed corpus, presumably $150,000, her income reveals a corpus of only $25,000, at 6%.

The second cause of action alleges a breach of trust in the retention by the trustee of the stock of Beach Lumber after the death of Samuel, Jr., since he could then no longer supervise the voting of it, and since the investment, as measured by its yield to the plaintiff, and the apparently small increase in the net worth of the company over the relevant years, was a poor and therefore an improper one. Although in this cause of action there are vague assertions that there was a concert of action between Robert Beach, Rome Trust Company, and McMahon, the only relief sought is (1) damages against the Rome Trust Company for breach of trust in the wrongful retention of the stock and in failing to account earlier, such damages to be ascertained by an accounting of the past and present value of the investment; and (2) removal of the Rome Trust Company as trustee.

The third cause of action is confusingly stated, but it appears to be alleged that plaintiff has been the legal owner of the stock of the Beach Lumber Company held by the trust since the death of Samuel, Jr., and that plaintiff should be declared legal and equitable owner. Whether this result is asserted to derive from a construction of the will itself, or to be the equitable relief appropriate to the breaches of the trust alleged, is not plain. It is however elsewhere generally alleged that McMahon, as counsel to Carrie

and Samuel, Jr., so prevailed upon them as to have prevented them from vesting the plaintiff with an outright one-half interest which they and Samuel, Sr. intended that she have.

The fourth cause appears to depend on the third, in that it is claimed that the retention of the stock by the Rome Trust Company rendered it a constructive trustee for plaintiff's benefit; but the relief demanded is damages in the amount of $250,000.

Finally, the plaintiff alleges a conspiracy between the several defendants led by McMahon to prevent the Beach Lumber Company from paying dividends and thereby to deprive the plaintiff of benefits under the trust. Although it is alleged as a conclusion that McMahon's behavior was fraudulent, all that is detailed is that he participated with or gave advice to several persons or companies whose positions vis-a-vis the plaintiff are adverse and thus aided in a breach of the trust duties of the testamentary fiduciary.

In a summary of the relief sought plaintiff demands an accounting of the estates of Samuel, Sr. and Carrie Beach and of the Beach Lumber Company; removal of Rome Trust Company as trustee, and damages from it for breach of trust; adjudication of and declaration of title to the Beach Lumber shares and an order turning them over to plaintiff; damages against McMahon as co-conspirator with the Rome Trust Company; and such other and further relief as is proper.

We turn now to consideration of the primary issue presented whether the district court properly declined to take jurisdiction of the controversy presented despite the presence of the requisite allegations of diversity of citizenship and jurisdictional amount.

■■ It is apparent from the facts set forth in the complaint that the estate of Carrie Beach and the trust which is composed of roughly half of its assets, are still in the process of administration in the Surrogate's Court of Oneida County. Since an accounting has not yet been had of the estate itself, and since any full accounting of the trust assets at this time would necessarily anticipate and interfere with it, plaintiff's demands for accounting of the estate and trust and removal of the trustee fall within the rule that a previously attached *quasi in rem* jurisdiction of property in a state court requires a federal court to dismiss any claim with regard to the property where the adjudication would interfere with the proceedings in the state court. See, e. g., Princess Lida of Thurn and Taxis v. Thompson, 1939, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285; Penn General Casualty Co. v. Commonwealth of Pennsylvania, 1935, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850. This principle is so firmly rooted in our law as to have required and not merely permitted Judge Foley to dismiss the plaintiff's claims insofar as they sought an accounting of the estate and trust.

■ The same rule governs the plaintiff's demand for a distribution to her of the common and preferred stock of Beach Lumber Company, since such a distribution before final accountings would run the hazard of conflict with the Surrogate's determination of the accounts of both the trust and the estate. See United States v. Bank of New York Co., 1936, 296 U.S. 463, 478, 56 S.Ct. 343, 80 L.Ed. 331; Waterman v. Canal-Louisiana Bank Co., 1909, 215 U.S. 33, 44–46, 30 S.Ct. 10, 54 L.Ed. 80.

■ It has been argued that since the New York court of general jurisdiction, the Supreme Court, concededly has jurisdiction to adjudicate these claims despite the status of proceedings in the Surrogate's Court, the district court therefore ought to have gone forward. But the fact that the Supreme Court of New York has coordinate jurisdiction of these claims could affect the rule of the Princess Lida case only to the extent that it demonstrated that the action in the Surrogate's Court was not in fact dependent upon the property in its possession, and was therefore *in personam* rather than *quasi in rem;* and this possibility we think is amply rebutted by the

fact that it is apparent that the Supreme Court would itself decline jurisdiction of these claims in favor of the Surrogate's Court provided only that it appeared that the Surrogate was empowered to give full relief. See Sullivan v. Title Guarantee & Trust Co., supra, and cases cited. It is the policy of the New York courts to concentrate in the hands of the Surrogate all matters affecting the administration of estates, and this policy appears to proceed from, or indeed to define, the nature of the Surrogate's jurisdiction as *quasi in rem.*

As to several of the claims presented, however, the matter is different. Insofar as the third cause of action seeks a construction of the will of Carrie Beach to declare plaintiff the owner of the stock she claims, and not a distribution of specific property, its prosecution would not constitute an interference with the jurisdiction of the Surrogate and the claim is therefore not within the rule above discussed. From the earliest probate cases in the federal courts a definite if not always precise line has been drawn between claims seeking to contest management or to effect a distribution of property, and those merely seeking a judgment *in personam* declaring the plaintiff entitled to receive from the fiduciary an interest in the estate. See, e. g., Waterman v. Canal-Louisiana Bank Co., supra. It has consistently been held that in a case between diverse citizens the federal courts will determine a controversy concerning the right of the plaintiff to share in the *res;* while it has at the same time been established that they will decline to undertake the general administration of the property. If this distinction is applicable in the present case then it follows that Judge Foley improperly concluded that because the plaintiff's claim to the stock as legal owner would present a question of will construction it was therefore within the exclusive jurisdiction of the Surrogate.

However, it is argued, in reliance upon our decision in Sullivan v. Title Guarantee & Trust Co., supra, that because it plainly appears that even as to this claim the Supreme Court would defer to the jurisdiction of the Surrogate, the district court, under the rule of Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 was bound to do the same. The contention thus presented is a novel one, which was not decided in the Sullivan case. We are urged to hold that when a state places matters otherwise within federal jurisdiction within the effectively exclusive jurisdiction of a specialized court, it therefore and without regard to the nature of the proceeding compels the federal courts to reject the action and thereby to contract their jurisdiction. In the Sullivan case we were confronted primarily with the question of the propriety of an injunction against state court proceedings. We held in part that the policy of the Guaranty Trust case that a federal diversity court sits as another court of the state as to all matters determinative of the outcome of the proceeding, made it singularly inappropriate that a federal court exercise its discretionary power to enjoin the Surrogate's Court when the Supreme Court of New York would not only not enjoin it, but would defer to its exercise of jurisdiction. We are concerned here not with the discretionary power of equity in the sensitive area of enjoining proceedings in another forum, but with the power of a federal court to hear a matter which does not interfere with the proceedings in the Surrogate's Court.

Since appellees do not and could not urge that the courts of New York would decline to hear the claim advanced, cf., Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Guaranty Trust Co. of New York v. York, supra, it appears that their argument that the district court was bound by the Guaranty Trust doctrine to decline the action depends upon the further assertion that the effectively exclusive vesting of it by New York in a "probate" court thereby removed it from federal power. It is of course true that as to purely probate matters the federal courts are without jurisdiction since the English High

Court of Chancery had no jurisdiction of such matters in 1789. See, e. g., Farrell v. O'Brien, 1905, 199 U.S. 89, 103 et seq., 25 S.Ct. 727, 50 L.Ed. 101, and cases cited. But it was early established that as to controversies that were not then regarded as probate matters federal jurisdiction could not be ousted by the mere internal arrangement of the state courts, see, e. g., McClellan v. Carland, 1910, 217 U.S. 268, 281–282, 30 S.Ct. 501, 54 L.Ed. 762; Waterman v. Canal-Louisiana Bank Co., supra; Borer v. Chapman, 1887, 119 U.S. 587, 7 S.Ct. 342, 30 L.Ed. 532; Hess v. Reynolds, 1885, 113 U.S. 73, 5 S. Ct. 377, 28 L.Ed. 927; Gaines v. Fuentes, 1875, 92 U.S. 10, 23 L.Ed. 524, and it is therefore plain that the mere fact that an ordinary action for equitable relief is placed by New York in the effectively exclusive jurisdiction of the "probate" court, see Raymond v. Davis, 1928, 248 N.Y. 67, 161 N.E. 421, is irrelevant to the existence of power to hear the cause.

With this defect the entire argument based upon the Guaranty Trust case must fall. It is not suggested that there would be the slightest difference in outcome between litigation in the district court and litigation in the available state court. Cf. Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199. Indeed appellees have been at pains to argue that the opposite is the case, and that precisely the same relief is available in the three forums concerned. It is therefore apparent that the transfer of cases from the Supreme Court to the Surrogate's Court is no more, for present purposes, than a change of venue. Such a change is utterly insufficient to invoke the vital doctrine of the Guaranty Trust case.

Similar considerations govern the disposition of plaintiff's claims of breach of trust and mismanagement against the Rome Trust Company. Princess Lida of Thurn and Taxis v. Thompson, supra, establishes that jurisdiction of such claims ought to be declined by a federal court when an accounting proceeding which, under state law, is *quasi in rem* has been previously commenced in the state courts.

That rule plainly governs here provided that there is a previously attached jurisdiction over the trust in the Surrogate's Court for Oneida County. We considered a substantially identical question in the case of Sullivan v. Title Guarantee & Trust Co., supra, where the issue of the existence of any jurisdiction whatever over this kind of claim in the district court was presented. After a careful review of the duties and organization of the relevant New York courts we conclude that the jurisdiction of the Surrogate over testamentary trustees would not prevent claims such as these for money damages from being heard in the district court at least when no previously instituted proceeding for an accounting was pending. We see no reason to revise that determination now, and accordingly we conclude that as to these claims there was jurisdiction in the district court.

We turn finally to the crucial issue in this case, whether despite the existence of subject matter jurisdiction over certain of the plaintiff's claims, it was within Judge Foley's power to decline to proceed with them and to dismiss the action in its entirety.

■ One aspect of this question is clear. In no event did the district court have power to decline jurisdiction and to dismiss such of the claims presented as ought to have been found to be within the subject matter jurisdiction of the district court and not to be an interference with a previously attached *quasi in rem* jurisdiction in the Surrogate's Court. Such power as the district court may have to defer to the Surrogate must be employed by abstention from the exercise, but not from the assumption, of jurisdiction. See, e. g., County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163.

■ The final question remains whether it would have been appropriate for Judge Foley to abstain from the exercise of jurisdiction in favor of the accounting proceeding subsequently commenced in the Surrogate's Court. It is now unequivocally established that the

federal courts whether sitting in law or in equity have the power in appropriate circumstances to decline to exercise the jurisdiction which they possess. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058. But it is equally well established that such a power to abstain is conditioned upon the existence of extraordinary circumstances touching what Mr. Justice Frankfurter in the Louisiana Power & Light case described as a policy derived from the nature of our federalism. While the Supreme Court has "increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law," it has continued to recognize that "the mere difficulty of state law does not justify a federal court's relinquishment of jurisdiction in favor of state court action." Louisiana Power & Light Co. v. City of Thibodaux, supra. An examination of the Louisiana case will provide the solution to the question whether such extraordinary circumstances as would justify abstention are presented here. There as here the district court had exercised its judgment to decline to adjudicate the action, so there was no question of the propriety of compelling an exercise of discretion which had been declined. The Court divided 6 to 3 on the propriety of the abstention despite the fact that it was acknowledged by all that the question of state law involved turned upon the construction of a state statute without benefit of judicial decision in the state courts, and that the relief sought, an expropriation of the Company's property by the City, presented serious questions of the internal distribution of governmental powers among the divisions of state authority. "Caught between the language of an old but uninterpreted statute and the pronouncement of the Attorney General of Louisiana, the district judge determined to solve his conscientious perplexity by directing utilization of the legal resources of Louisiana for a prompt ascertainment of meaning through the only tribunal whose

interpretation could be controlling—the Supreme Court of Louisiana." The majority found that justification for this power in the district court "lies in regard for the respective competence of the state and federal court systems and for the maintenance of harmonious federal-state relations in a matter close to the political interests of a State."

■ It is not even suggested that such compelling circumstances exist here. In support of Judge Foley's power to abstain we are told only that the Surrogates' Courts commonly handle such questions. Of course they do; but so do the federal courts. No controlling or obscure question of state law is presented on this complaint; and no specialized executive regulatory agency is concerned. Cf. Commonwealth of Pennsylvania v. Williams, 1935, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841. We are faced only with the decision of New York to put certain matters of ordinary equitable and legal cognizance within the substantially exclusive control of a particular court. It is plain that no abstention from the exercise of jurisdiction should be sustained in such circumstances if the conditions governing the propriety of the assumption of jurisdiction otherwise obtain. County of Allegheny v. Mashuda, supra; McClellan v. Carland, supra. In a case such as this "the party properly situated has a right, given by the Constitution of the United States, to have [his claims] tried * * * in a court of the United States, which cannot be defeated by state statutes enacted for the more convenient settlement of estates of decedents." Hess v. Reynolds, supra, 113 U.S. at page 77, 5 S.Ct. at page 378; see also Payne v. Hook, 1869, 7 Wall. 425, 74 U.S. 425, 19 L.Ed. 260.

The decision below insofar as it dismissed plaintiff's claims for a declaration of her alleged legal ownership of certain assets, and for breach of trust against the Rome Trust Company and McMahon is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

For the reasons set forth at length in Sullivan v. Title Guarantee & Trust Co., supra, we affirm Judge Foley's refusal to enjoin the subsequently initiated proceedings in the Surrogate's Court.