Maxwell D. FELSON, Plaintiff,

v.

Walter A. MILLER, Defendant.

No. 84 CV 4105.

United States District Court, E.D. New York.

Nov. 23, 1987.

Cole, Schotz, Bernstein, Meisel & Forman (Thomas J. LaContept, of counsel), Hackensack, N.J., for plaintiff.

Bigham, Engle, Jones, Houston (Peter Broeman, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

In this action based on diversity of citizenship, 28 U.S.C. § 1332(a)(1), defendant moves to dismiss the Complaint on the grounds that it fails to state a claim upon which relief can be granted and that plaintiff does not have standing or capacity to sue. Fed.R.Civ.P. 12(b)(6), 17. For the reasons discussed below, the Court construes the motion to dismiss for lack of capacity as a motion to dismiss for failure to state a claim, and grants the motion.

### FACTS

This is a claim for legal malpractice. For purposes of diversity jurisdiction, plaintiff is a New Jersey citizen and defendant is a New York citizen. The amount in controversy exceeds ten thousand dollars.

Plaintiff is the beneficiary of trusts established under the wills of his father and mother. At all relevant times, defendant was a trustee of the trusts. Taken together, the trusts owned sixteen and one-half percent of the outstanding shares of Fleetwood Enterprises, Inc. and Fleetwood Parking, Inc. (together "Fleetwood").

Fleetwood Enterprises was a closely-held corporation that owned an apartment complex in Yonkers, New York. Fleetwood Parking was a corporation owned by Fleetwood Enterprises' shareholders in the same proportion that they owned Fleetwood Enterprises shares. Fleetwood Parking's sole purpose was to lease parking facilities from Fleetwood Enterprises. At all relevant times, plaintiff was not a Fleetwood shareholder, but served on Fleetwood's board of directors. Defendant was on its board of directors, and served as counsel to Fleetwood.

In December 1980, Fleetwood's board of directors decided to sell the apartment complex in Yonkers. Defendant acted as counsel in connection with the sale, and prepared a contract of sale. The sale was approved by Fleetwood's board on October 15, 1981. The contract of sale contained, among other things, a representation by Fleetwood that during 1980 approximately 121,500 gallons of fuel oil were delivered to the apartment complex. The contract provided that this representation would survive the closing. The sale price was $3.8 million. At closing, the purchasers executed a $2.55 million purchase money mortgage, with Fleetwood as mortgagee. Pursuant to a consolidation and extension agreement, the mortgage stood as collateral for the breach of any representation in the contract of sale, for as long as that representation survived the closing. The note secured by the mortgage provided that the purchasers would make interest and principal payments through 1994, when a balloon payment of $1,978,540 would be due.

Closing took place on February 1, 1982. Two months later, attorneys for the purchasers correctly stated in a letter to the defendant that the amount of fuel oil used on the premises in 1980 was 149,990 gallons, not 121,500 gallons as represented in the contract of sale. The purchasers demanded that the sum of $303,882 be deducted from the indebtedness secured by the mortgage.

At a meeting of Fleetwood's board of directors, plaintiff accused defendant of

gross negligence and conflict of interest with regard to the preparation of contract of sale. Plaintiff demanded that outside counsel be retained to handle the matter. Upon defendant's recommendation, this demand was rejected. The board appointed defendant and another board member to negotiate with the purchasers. A compromise was eventually reached and was approved by the board. The compromise provided that the purchasers would continue to make interest and principal payments until November 2005. The balloon payment provision was eliminated. Fleetwood, as mortgagee, subsequently assigned the mortgage and note to the shareholders in proportion to their ownership.

Plaintiff thereafter commenced this action. The gravamen of the Complaint is that defendant, in his role as counsel for Fleetwood, damaged the value of the trusts of which plaintiff is a beneficiary by negligently causing the false representation concerning the fuel oil to be inserted into the contract of sale. The Complaint also asserts that defendant's failure to hire independant counsel and his recommendation that a compromise be negotiated with the purchasers constituted malpractice. Separate proceedings were instituted in state court against defendant in his capacity as trustee.

This motion followed. Defendant argues that the Complaint should be dismissed for two reasons. First, he argues, plaintiff has neither standing nor capacity to bring this action under Fed.R.Civ.P. 17. Defendant's second assertion is that the Complaint fails to state a claim because plaintiff has not suffered damages and as a matter of law cannot sustain damages until 1994, the original due date of the balloon payment. *See* Fed.R.Civ.P. 12(b)(6).

## DISCUSSION

### I. Standing; Capacity to Sue

Defendant's first argument is that because defendant and plaintiff were not in privity of contract, New York law forbids a recovery by plaintiff on the theory of legal malpractice. Accordingly, defendant argues, the Complaint must be dismissed under Fed.R.Civ.P. 17(b) because plaintiff has neither capacity nor standing to sue.

■ Rule 17(b) reads, in relevant part: "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile." Rule 17(b) refers solely to capacity, a concept distinct from standing. Capacity is "the party's personal right to litigate in federal court." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1542, at 639 (1971). Capacity thus does not depend on the nature of the claim alleged in the Complaint. *See id.* The relevant inquiry under Rule 17(b) is whether the laws of the individual's domicile permit him to sue or be sued. Infancy and incompetency, among other things, can constitute lack of capacity.

■ Standing, which is not addressed by Rule 17(b), is a more elusive concept than capacity, and does not admit of a simple definition. *See Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) ("Generalizations about standing to sue are largely worthless as such."). The constitutional component of standing requires at a minimum that there be an " 'actual injury redressable by the court.' " *Director, Office of Workers' Compensation Programs v. Perini North River Associates,* 459 U.S. 297, 303, 103 S.Ct. 634, 639, 74 L.Ed.2d 465 (1983) (quoting *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). The purpose of the requirement is to provide the court with a concrete factual setting in which to decide legal questions. *See Perini, supra,* 459 U.S. at 303, 103 S.Ct. at 639.

The differences between standing and capacity can easily be illustrated. An infant alleging personal injury would lack capacity, but would satisfy the standing requirement. A competent adult failing to allege an interest in a claim would lack standing, but have capacity to sue.

■ In this case, it is clear that both the capacity and standing requirements have been met. Defendant does not suggest that New Jersey law denies plaintiff the right to sue or be sued. In addition, plaintiff has asserted that due to defendant's conduct plaintiff has suffered an ' injury that the Court may redress.

The gist of defendant's argument is that plaintiff's malpractice claim must fail because one element of such a claim—privity—is absent. It is thus apparent that defendant's Rule 17(b) motion, with attendant references by the parties to capacity and standing, should have been denominated as a motion to dismiss the Complaint for failure to state a claim under Fed.R. Civ.P. 12(b)(6). Legal memoranda submitted by the parties treat the issue as such, and I will address it accordingly.

## II. The Privity Requirement

■ Because this is a diversity action, the Court must apply the law of the forum state. *See Erie Railroad v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In this case, the parties agree that New York would apply its own substantive law. Under New York law it is well established that, absent special circumstances, a party not in contractual privity with an attorney may not recover for the harm caused by the attorney's negligence. *See National Westminster Bank USA v. Weksel,* 124 A.D.2d 144, 146, 511 N.Y.S.2d 626, 628 (1st Dep't 1987); *Viscardi v. Lerner,* 125 A.D.2d 662, 663–64, 510 N.Y.S.2d 183, 185 (2d Dep't 1986). Plaintiff argues that the relationship between the parties constitutes special circumstances sufficient to create an exception to the rule. I disagree.

Plaintiff cites only one legal malpractice case, *Baer v. Broder,* 86 A.D.2d 881, 447 N.Y.S.2d 538 (2d Dep't 1982), that applied the special circumstances test. *Baer,* however, is readily distinguishable from this case. In *Baer,* the plaintiff was a widow who had been appointed executrix under her husband's will. Plaintiff retained defendant to continue prosecution of a wrongful death action that she had brought in her capacity as executrix. The wrongful death action was settled. Plaintiff, in her individual capacity, subsequently commenced a legal malpractice case against defendant. Defendant moved to dismiss the complaint for failure to state a cause of action, and because plaintiff lacked legal capacity to sue. Plaintiff cross-moved to amend the summons and complaint to substitute herself in her capacity as executrix. *See Baer, supra,* 86 A.D.2d at 881, 447 N.Y.S.2d at 538–39.

The Supreme Court, Suffolk County, denied the motions. In a sweeping opinion, the Court declined to fashion an exception to the privity rule. Instead, the Court held, the time had arrived for abolition of the privity requirement. The determination of whether a non-privy party could sue would be based on public policy. *See Baer v. Broder,* 106 Misc.2d 929, 929–31, 934–35, 436 N.Y.S.2d 693, 694–95, 696 (Sup.Ct.1981) (following *Donald v. Garry,* 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971)), *aff'd on other grounds,* 86 A.D.2d 881, 447 N.Y.S.2d 538 (2d Dep't 1982). The Court reviewed the factors—the parties' face-to-face relationship, and the fact that the plaintiff was the real party in interest in the wrongful death action—and concluded that privity was not necessary in the case. 106 Misc.2d at 934–35, 436 N.Y.S.2d at 693.

The Appellate Division, Second Department, affirmed, but on a different ground. 86 A.D.2d at 881, 447 N.Y.S.2d at 539. The court reaffirmed the general rule regarding privity. After considering the same factors that the lower court had, the court held that the case constituted an exception to the privity requirement. *Id.* at 881–82, 447 N.Y.S.2d at 539.

In *Viscardi, supra,* the Second Department subsequently reaffirmed both the "firmly established" privity rule and the "special circumstances" exception. 125 A.D.2d at 663–64, 510 N.Y.S.2d at 185.

Plaintiff argues that two facts create special circumstances here: the parties' face-to-face relationship and the forseeability of injury to defendant from plaintiff's negligence. I disagree.

First, I conclude that plaintiff and defendant did not have face-to-face relations within the *Baer* context. In *Baer*, plaintiff had retained defendant, and he had prosecuted the wrongful death action. Although plaintiff as executrix did not have an economic interest in the outcome of action, she did have such an interest as an individual and distributee. *See Baer, supra,* 86 A.D. 2d at 882, 447 N.Y.S.2d at 539. In this case, plaintiff did not hire defendant, and certainly did not work with him. Thus, the keystone upon which *Baer* was based—an attorney-client relationship initiated by plaintiff in which plaintiff has an actual personal stake in both proceedings—is absent here.

Second, I reject plaintiff's forseeability argument. That an attorney's negligence may injure forseeable third parties is not sufficient reason to depart from the privity requirement. Such an approach, taken to it logical conclusion, would seriously undermine, if not eradicate, the privity rule.

For the foregoing reasons, the Court concludes that plaintiff has failed to state a legal malpractice claim. Accordingly, defendant's motion to dismiss the Complaint is granted.

SO ORDERED.