Jo-Ann Fox **WEINGARTEN** and Susan Fox Rosellini, Plaintiffs,

v.

**William C. WARREN, individually and as executor of the Estate of Belle Fox, Defendant.**

**No. 90 Civ. 4338 (MBM).**

United States District Court, S.D. New York.

Dec. 19, 1990.

Robert J. Hausen, Stanley S. Arkin, Marc Ullman, Chadbourne & Parke, New York City, for plaintiffs.

Edward J. Reilly, George Brandon, Jeffrey K. Brinck, Steven T. Potts, Elizabeth M. Sacksteder, Milbank, Tweed, Hadley & McCloy, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs Jo–Ann Fox Weingarten and Susan Fox Rosellini sue defendant William C. Warren, both individually and in his capacity as executor of their grandmother's estate in the Bahamas, alleging that their grandmother, Belle Fox ("Belle"), as trustee, and Warren, as her attorney, conspired to convert trust principal unlawfully to trust income to the detriment of the remaindermen, plaintiffs here, and that Belle and Warren breached the fiduciary duties each owed the remaindermen, Belle as trustee, and Warren as counsel to the trustee and, from 1986 to 1989, attorney in fact for the trust. They also sue Warren for malpractice, asserting that he breached the duty of competence and honesty he owed to all beneficiaries as counsel to the trustee. Finally, they request an accounting from Warren, as executor of Belle's estate, for Belle's actions as trustee.

■ Defendant Warren brings this motion in both his capacities, asking that the court dismiss the complaint for lack of subject matter jurisdiction, and in the alternative, as to the claims against Warren personally, for failure to state a claim. At the least he asks that the court abstain from hearing the claims against him personally under the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), which counsels federal courts to abstain in favor of concurrent state court proceedings based on a balance of factors, including the desirability of avoiding piecemeal litigation, inconvenience of the federal forum, and the order in

which jurisdiction was obtained. *Id.* at 818, 96 S.Ct. at 1246.

For the reasons outlined below, defendant's motion is granted as to the professional malpractice action against him personally, but is otherwise denied.

## I.

Plaintiffs are the great-granddaughters of William Fox, founder of Fox Film Company, and settlor of a trust in 1931. William's wife, Eva, was the trustee and sole income beneficiary of the trust. Upon her death in 1961, the trust was divided—half for each of William and Eva's two daughters, Belle and Mona. Only Belle's half is at issue in this suit and will hereafter be referred to as "the trust." Again pursuant to the original trust indenture, Belle became the sole trustee and sole income beneficiary under the trust. The trust indenture provided that upon the death of Belle, the trust would be distributed outright to her son, or, if he predeceased her, to his descendants. Belle's son predeceased her; his only descendants are the plaintiffs herein, his daughters. Belle died on February 20, 1989 a citizen of Greece and a domiciliary of the Bahamas.

Defendant William Warren, former Dean of Columbia University Law School, was Belle's personal attorney and advised her with regard to the affairs of the trust from 1961 to her death in 1989. Upon her death Warren, pursuant to the terms of Belle's will, once it was admitted to probate in the Bahamas, became Belle's executor. He is also the founder, along with Belle, of the William and Eva Fox Foundation ("the Foundation"), as well as its sole director. Under Belle's will, all the assets of her estate went to the Foundation. Plaintiffs have received the principal of the trust, over $7 million.

## II.

The probate exception to diversity jurisdiction, vague in its origins, requires a federal court to hold that it has no subject matter jurisdiction over suits that fall within the exception, as follows: "a federal court has no jurisdiction to probate a will, administer an estate, or entertain any action that would interfere with probate proceedings pending in a state court or with its control over property in its custody." *Celentano v. Furer,* 602 F.Supp. 777, 779 (S.D.N.Y.1985); *see also Ashton v. The Josephine Bay Paul and C. Michale Paul Foundation, Inc.,* 918 F.2d 1065 (2d Cir. 1990). The exception is not all encompassing: it does not prevent a federal court from exercising jurisdiction to determine rights to property in probate "where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Ashton,* at 1072. The standard for upholding federal subject matter jurisdiction against an invocation of the probate exception was set forth by the Second Circuit in *Lamberg v. Callahan,* 455 F.2d 1213 (2d Cir.1972):

> The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes,* enforceable in a state court of general jurisdiction, federal jurisdiction will be assumed.

*Id.* at 1216.

There are two other courts with jurisdiction over matters that relate to this suit. The probate court in the Bahamas is supervising the administration of Belle's estate. This suit is an attempt to prevent assets now in Belle's estate from going into the Foundation, and instead to return those funds to the principal of the trust and therefore, now that the trust is fully executed, to pay the funds to plaintiffs. Second, in a proceeding before the New York Surrogate's Court, plaintiffs sought the appointment of a successor-trustee because under Belle's will Warren became the trustee of their trust. The Surrogate issued an order shortly after the case at bar was filed directing sua sponte that Warren,

"Executor of the Estate of Bella [sic] Fox shall account for the proceeds of Bella Fox as Trustee herein at such time as the successor and remaining fiduciary is so required to account or at such time fixed by the court upon the application of a proper party...." That Court also retained jurisdiction "over any issue concerning the refund of overdistributions made to the remaindermen." (Arkin Aff.Exh. E) Plaintiffs have not requested an accounting in the Surrogate's Court. They therefore claim that there is no reason for this federal court, which received plaintiffs' request for an accounting before the Surrogate ruled, to abstain in favor of nonexistent Surrogate's Court proceedings.

This action will not interfere with the probate proceedings in the Bahamas. The parties proffer affidavits from Bahamian lawyers who agree that the jurisdiction of the Bahamas Supreme Court over probate proceedings is exclusive only when the proceedings are "non-contentious" or "in common form" within the strict definition of § 128 of the English Supreme Court Act 1981, but disagree as to whether this test is met here. That section reads as follows:

> "Non-contentious or common form probate business" means the business of obtaining probate and administration where there is no contention as to the right thereto, including,
>
> (a) the passing of probates and administrations through the High Court in contentious cases where the contest has been terminated,
>
> (b) all business of a non-contentious nature in matters of testacy and intestacy not being proceedings in any action, and
>
> (c) the business of lodging caveats against the grant of probate or administration.

Johnstone Aff. ¶ 6.

According to plaintiffs, this jurisdiction does not extend to actions brought against the estate of a decedent for civil wrongs she committed in her lifetime. If the Bahamas Supreme Court has jurisdiction at all over such an action, it has at best concurrent jurisdiction. In sum, the Bahamas Supreme Court will recognize and enforce a foreign judgment with respect to such a claim so long as that foreign court has jurisdiction and the judgment is "expressed to be for a fixed sum of money in accordance with Bahamian conflict of laws rules." Johnstone Aff. ¶ 9. Defendant's expert responds that "Action Number 6 of 1990, in our Supreme Court, on its Probate Side [the probate action commenced by Dean Warren as executor], is clearly a Non-contentious Probate Action in Common Form and, as such, is governed by **'the law and practice, so far as they are applicable, for the time being'**, in force in England." Defendant argues that because the Bahamas Supreme Court has prior exclusive jurisdiction over the res, any judgment against the estate rendered by this Court can be enforced only by the Bahamas Supreme Court so long as the estate remains in probate.

Even if I accept defendant's assertion that the Bahamas Supreme Court has exclusive jurisdiction over the res of the estate, that does not mean it also has exclusive jurisdiction over the claims in this action. Rather, it may have exclusive jurisdiction to enforce a remedy so long as the estate remains in probate. Accordingly, these claims are governed by *Markham v. Allen:* even if this court cannot award plaintiffs funds out of the estate, it can grant them a right which can be enforced against the estate in the Bahamas. Plaintiffs concede that to grant some of the specific relief they request, *e.g.*, to turn over specific assets of the estate, might interfere with probate in the Bahamas. But to decide this motion, I need not also decide whether plaintiffs are entitled to, or whether this court can award, all of the relief they seek. The solution may be to confine this court's judgment to money damages and declaratory relief. *See Giardina v. Fontana,* 733 F.2d 1047, 1050–51 (2d Cir.1984).

### III.

■ The probate exception to diversity jurisdiction does not apply to trusts. *Barnes v. Brandrup,* 506 F.Supp. 396, 399

(S.D.N.Y.1981). Nevertheless, equitable principles articulated in *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), may restrict a federal court's power to hear a case otherwise within its diversity jurisdiction. *See Beach v. Rome Trust Co.*, 269 F.2d 367 (2d Cir.1959). The rule in *Princess Lida* is: "when 'two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.... The doctrine is necessary to the harmonious cooperation of federal and state tribunals.' " *Barnes*, 506 F.Supp. at 399 (quoting *Princess Lida*, 305 U.S. at 466, 59 S.Ct. at 280).

This rule was applied by the Second Circuit in *Beach*, a case involving claims brought by the beneficiary of a testamentary trust against the testamentary trustee, while the decedent's estate was still in probate:

> Since an accounting has not yet been had of the estate itself, and since any full accounting of the trust assets at this time would necessarily anticipate and interfere with it, plaintiff's demands for accounting of the estate and trust and removal of the trustee fall within the rule that a previously attached quasi in rem jurisdiction of property in a state court requires a federal court to dismiss any claim with regard to the property where the adjudication would interfere with the proceedings in the state court.

*Id.* at 371.

Plaintiffs distinguish *Princess Lida* on two grounds. First, an action for an accounting was pending in the Court of Common Pleas at the time the federal suit was commenced. Therefore, the holding turned on the principle that once it is found that there is jurisdiction over property, in rem or quasi in rem, then the court exercising jurisdiction of necessity has exclusive jurisdiction. Since in the case at bar, no action for an accounting is pending in the Surrogate's Court, that court has no prior quasi in rem jurisdiction. Second, they distinguish *Princess Lida* as a case involving a continuing trust, not a fully executed trust where plaintiffs have a present right to all proceeds. According to plaintiffs, that difference affects the basis of this court's jurisdiction. Instead of in rem claims to restore the corpus of the trust for further administration by the trustee, plaintiffs' claims are in personam claims against the trustee for sums due plaintiffs directly.

The Surrogate's Court exercised jurisdiction over the corpus of the trust at plaintiffs' request, before this suit was filed, to appoint a successor trustee under N.Y.S.C. P.A. § 1502. Once the successor trustee was appointed, though, jurisdiction over the corpus of the trust vested in that trustee, who under § 1502(6) "shall be subject to the same duties, as to accounting and trust administration, as are imposed by law on trustees." N.Y.S.C.P.A. § 1502 (McKinney's 1967 and Supp.1990). There is therefore no continuing quasi in rem jurisdiction in the Surrogate's Court which would prevent this Court from exercising its jurisdiction to grant plaintiffs an accounting or to hear plaintiffs' claims for conversion and breach of fiduciary duty.[1]

### IV.

Plaintiffs' breach of fiduciary duty allegations rest on the assumption that as counsel to Belle, the trustee, Warren owed a fiduciary duty not just to Belle, his client, but to all beneficiaries of the trust. In their opposition to defendant's motion to dismiss, plaintiffs refer to the trust indenture attached as an exhibit to the complaint, which includes a provision that authorizes the trustee to hire counsel and pay him out of the trust. (Pl.Br. at 29) In *In*

---

1. The sua sponte statement in the Surrogate Court's Order that Warren as executor shall account for the actions of Belle as trustee is best interpreted as an invitation for plaintiffs to file their accounting action in Surrogate's Court in response to statements by defendant suggesting that he would object to the Surrogate's Court as the proper forum for "asserting against the trust or against the Estate of Belle Fox the putative claims of Petitioners." (Arkin Aff.Exh.D, pp. 5–6)

re Clarke's Estate, 12 N.Y.2d 183, 237 N.Y.S.2d 694, 188 N.E.2d 128 (1962), where an attorney's fees were disallowed in an accounting of an estate because the attorney had a conflict of interest with the beneficiaries of the estate, the Court of Appeals held that: "[a]n attorney for a fiduciary has the same duty of undivided loyalty to the cestui as the fiduciary himself." Id., 12 N.Y.2d at 187, 237 N.Y.S.2d at 697, 188 N.E.2d at 130; see also In re Bond & Mortg. Guarantee Co., 303 N.Y. 423, 103 N.E.2d 721 (1952) ("by reason of their status as attorneys for the trustee, [they] were no less fiduciaries than was the trustee himself.")[2] By alleging that Warren acted as attorney for the trustee and that he violated his fiduciary duty to the beneficiaries, plaintiffs have stated a cause of action against Warren individually for breach of fiduciary duty.

■ Plaintiffs argue also that Warren is liable for breach of fiduciary duty for having aided and abetted Belle in her alleged breach of fiduciary duty. To state a claim for aiding and abetting a fiduciary, plaintiffs must show inter alia that defendant acted in furtherance of his own self-interest. See Feinberg Testamentary Trust v. Carter, 652 F.Supp. 1066, 1082 (S.D.N.Y. 1987). Most of plaintiffs' claims allege that money allegedly diverted from the trust corpus went to Belle, not to Warren. Plaintiffs claim that Belle gave Warren $1 million in 1987 through 1989, but defendant argues that the alleged breaches and alleged benefit are not sufficiently close in time to be connected: the breaches for which defendant is being sued date back through the 1960's. Plaintiffs also allege that Warren obtained appointments as executor of Belle's will and as sole director of the Foundation that controlled her estate. Further, they allege that Warren retained his position as counsel to Belle throughout the period 1961 to her death, from which they argue it is reasonable to infer that he reaped 28 years of legal fees. For purposes of this motion, plaintiffs have sufficiently stated a claim that Warren aided and abetted an alleged violation of fiduciary duty by the trustee Belle Fox.

■ With regard to their professional malpractice claim, plaintiffs agree that "under New York law it is well established that absent special circumstances, a party not in contractual privity with an attorney may not recover for harm caused by the attorney's negligence," Felson v. Miller, 674 F.Supp. 975, 978 (E.D.N.Y.1987), and that there is no contractual privity between plaintiffs and Warren. Instead, they claim that the complaint alleges such gross fraud and misconduct so as to fit within the category of "special circumstances." The case plaintiffs cite in support of this contention, in fact the only New York case in which special circumstances were found, involved a widow, who as the executrix of her late husband's estate, hired an attorney to file a wrongful death action on behalf of his distributees. The widow in her individual capacity then sued the attorney for malpractice. The Appellate Division allowed the suit to proceed despite lack of contractual privity because: "plaintiff and defendant were engaged in a face-to-face relationship in the underlying wrongful death action and '[i]f defendant breached a duty to the plaintiff in that action the foreseeable harm to the plaintiff individually as the widow was the obvious and the direct result thereof. In a real sense, the plaintiff in this action was also one of the real parties in interest in the wrongful death action.' (Her son was the other)." Baer v. Broder, 86 A.D.2d 881, 447 N.Y.S.2d 538, 539 (2d Dep't 1982). In the absence of facts establishing a relationship as close as that estab-

---

**2.** It bears mention, in response to plaintiffs' complaint and brief, that it would not necessarily constitute a conflict of interest for Warren to have acted as attorney for Belle as income beneficiary and at the same time as attorney for Belle as trustee. The interest of the trust is to see that the income beneficiary receive as much as is due her under the trust indenture, but no more. This is not in conflict with the interests of the remaindermen, who are entitled to receive the same: as much as is their due, but no more. So long as the attorney remains independent, there is nothing inherently suspicious about this arrangement, particularly as the trust indenture creates the very conflict plaintiffs decry. It is the trust indenture that makes Belle both trustee and income beneficiary.

lished in *Baer*, there is no justification for abandoning the privity requirement. Plaintiffs' malpractice claim against Warren is therefore dismissed.

■ Warren moves to dismiss plaintiffs' claim for conversion against him individually because they did not allege that Warren received any of the proceeds from the alleged stock dispositions. Possession of the property is unnecessary to state a claim for conversion; it is sufficient that the wrongdoer interfere with another's right to possession. *General Electric Co. v. American Export Isbrandtsen Lines, Inc.*, 37 A.D.2d 959, 327 N.Y.S.2d 93, 95 (2d Dep't 1971); *Ahles v. Aztec Enterprises, Inc.*, 120 A.D.2d 903, 502 N.Y.S.2d 821 (3d Dep't 1986). In his reply brief defendant adds the further ground that since Belle, as trustee, was properly in possession of the trust property at the time the alleged stock dispositions occurred, and plaintiffs in fact had no right to possession at that time, plaintiffs cannot state a claim for conversion against either Belle or Warren. The cause of action for conversion arises at the time the remaindermen have a right to possession of the entire corpus, demand the entire corpus, including those parts that they claim were unlawfully converted, and then are refused by the trustee on the ground that those allegedly converted funds are no longer, if they ever were, part of the corpus, even if the actual conversion occurred at some earlier date. *See Johnson v. Gumer*, 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983); *see also Heller v. Gerry*, 40 A.D.2d 236, 339 N.Y.S.2d 18, 21 (3d Dep't 1972). Plaintiffs had no possessory rights until Belle died. Once she did, they brought this action to assert their rights in trust assets allegedly converted by Belle and Warren. Based on their pleadings, plaintiffs have stated a cause of action for conversion against Warren as the executor of Belle's estate, and also against Warren as an individual.

### V.

The doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)). There is no reason to abstain in favor of the proceedings in the Surrogate's Court in view of the limited jurisdiction that court retained over issues involving the refund of overdistributions to the remaindermen.

\* \* \*

For the reasons set forth above, defendant's motion to dismiss is granted as to plaintiffs' malpractice claim against Warren individually, and denied in all other respects.

SO ORDERED.